Mike **GAYDOSH**, Jr., Administrator of the Estate of Mike Gaydosh, Appellant,

v.

John L. **LEWIS** et al., Appellees.

No. 21760.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 11, 1968.

Decided March 7, 1969.

Mr. Louis Rabil, Raleigh, N. C., with whom Messrs. Michael J. Rabil and Edward J. Gorman, Jr., Washington, D. C., were on the brief, for appellant.

Mr. Charles L. Widman, Washington, D. C., with whom Messrs. Welly K. Hopkins and Joseph T. McFadden, Washington, D. C., were on the brief, for appellees.

Before DANAHER,* TAMM and LEVENTHAL, Circuit Judges.

TAMM, Circuit Judge:

Once again we are faced with the difficult question of determining the validity of certain pension eligibility requirements under the United Mine Workers of America Welfare and Retirement Fund of 1950 (hereinafter "Trust" or "Fund"). This is an appeal from a grant of summary judgment in favor of the appellees-trustees by the district court and in this posture poses the narrow issue of whether the action of the appellees, in denying appellant's application for a pension, was arbitrary or capricious as a matter of law. We feel compelled to hold that it was not.

The Trust in question arose out of negotiations between the United Mine Workers of America and the bituminous coal operators of the United States and is embodied in the terms of the National Bituminous Coal Wage Agreement of 1950. The Fund was set up in conformance with Section 302(c) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c) (1950) and is presently funded by a royalty payment by the operators of forty (40¢) cents per ton of coal "produced for use or for sale." The settlors of the Trust appointed the appellees as trustees to administer the fund for the benefit of the employees of the operators. These trustees include a representative from the union, a representative from management and a neutral representa-

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

tive selected by consent of the other two. The Fund is chaired by the representative of the union (Lewis) (J.A. 26).

Under the indenture the trustees were to have "full authority * * * with respect to questions of coverage and eligibility * * *" and the basis upon which the "payments from the Fund will be made shall be resolved in writing by the * * * Trustees at their * * * meeting * * *" (J.A. 26). Pursuant to this authority the trustees met on April 5, 1950 and drafted Resolution No. 10 for the purpose of setting guidelines for eligibility for and payment from the Fund. This resolution provided that an applicant shall be eligible for a pension if he (1) has attained the age of sixty (60) years, (2) retired after May 29, 1946, (3) had been employed for one year in the bituminous coal industry immediately prior to retiring, and (4) had completed twenty (20) years of service in the coal industry in the United States.

Appellant, Mike Gaydosh, Jr., is the administrator of the estate of Mike Gaydosh (plaintiff in the lower court and hereinafter "Gaydosh"). In May of 1950, Gaydosh ceased employment in the coal industry, having attained the age of fifty-six (56). At that time he had unquestionably met the requirements of Resolution No. 10 save reaching the necessary age of sixty.

On January 29, 1953, the trustees, in accordance with their "full authority" and in anticipation of preserving a fast diminishing Fund, agreed to supersede Resolution No. 10 and in its place adopted Resolution 30 "to govern the payments of pensions hereafter." Resolution 30 also contained eligibility requirements which an applicant must meet to qualify for a pension under the Fund. While these requirements also called for attainment of the age of sixty and establishment of twenty years service in the coal

industry, subsection (c) required that the applicant must have "retired from work in the * * * Industry *after* May 28, 1946, *following a period of regular employment in the Coal Industry immediately preceding May 29, 1946. * * *"* (Emphasis supplied.) (J.A. 33.) This meant that should an applicant have met all the other requirements for payment, a pension would not be forthcoming until the applicant could demonstrate that he had worked in the coal industry on the day before May 29, 1946.[1]

Approximately one year after the adoption of Resolution No. 30, Gaydosh reached the necessary age of sixty and applied for his pension. In proceeding upon that application it was discovered that Gaydosh had not worked in the industry from June of 1943 to June of 1947 and therefore failed to qualify under subsection (c) of Resolution 30. Accordingly his application for a pension was denied on September 17, 1954, on the ground that the applicant "has not established proof of regular employment * * * in the coal industry immediately prior to May 29, 1946." (J.A. 38.) Gaydosh undertook to achieve certain informal remedies within the offices of the Trustees and upon *final denial by the Fund's Final Review and Appeal Board on October 21, 1965*, filed suit in the district court of this circuit to compel payment.

In the trial court the appellant alleged that he was eligible under all of the pertinent resolutions and that his denial of a pension was the result of arbitrary and capricious invocation of new regulations thereby depriving him of a rightful pension. The appellees answered defending on the grounds of ineligibility under subsection (c) of Resolution No. 30 and denying any arbitrary or capricious conduct. Cross-motions for summary judgment were filed and argued. On January

---

1. Resolution 30 goes on in the alternative to provide "that if he had retired from or ceased working in the Bituminous Coal Industry prior to May 29, 1946, he shall be eligible for a pension only upon the completion of twenty (20) years service in the Bituminous Coal Industry, and meets the other requirements of eligibility as contained in Paragraphs A and B and its subsections, subsequent to May 28, 1946." (J.A. 33.)

18, 1968, the District Court entered judgment in favor of the Trustees. Gaydosh appealed. We affirm.

■■ Because "the Trustees, like all fiduciaries, are subject to judicial correction * * * upon a showing that they have acted arbitrarily or capriciously towards one of the persons tó whom their trust obligations run," [2] the activity of the appellees is amenable to the scrutiny of this court. However its accountability extends only to the issue of whether their action, in altering the eligibility requirements to the exclusion of the appellant's decedent, was an arbitrary abuse of their powers under the Trust. It is to those limits we inquire.

■ The appellant first urges that the action of the Trustees was an abuse of their authority and a subversion of the very purpose of the Trust. We do not find this to be so. The terms of the Trust Indenture (J.A. 25–27) vest the Trustees with "full authority * * * with respect to questions of coverage and eligibility. * * * " This must mean that the trustees have full authority with questions of coverage and eligibility. Absent abuse their determinations concerning coverage and eligibility will be left undisturbed. However, the appellant asserts that the alteration of the eligibility requirements *was* a clear abuse of their authority and therefore must fail. This assertion does not take into account the several cases in this circuit which have considered this "alteration" and have found it to be both reasonable and necessary. *See* Danti v. Lewis, 114 U.S.App. D.C. 105, 312 F.2d 345 (1962); Kosty v. Lewis, *supra*, note 2; Miniard v. Lewis, 128 U.S.App.D.C. 299, 387 F.2d 864 (1967); and Roark v. Lewis, 130 U.S. App.D.C. 360, 401 F.2d 425 (1968). This court, in *Roark*, expressly held that the trustees' interpretation of subsection (c) of Resolution 30 was "a patently reasonable one." Does it not follow that this finding *a fortiori* assumes that the whole of Resolution 30 is "patently reasonable?" Again, in Kosty v. Lewis, *supra*,

at 347–348, 319 F.2d 744, at 748–749, "[w]e [did] not deny the authority of the Trustees to revise pension eligibility requirements * * *. Flexibility of this kind seems especially necessary for the operation of this Fund, tied as it is to the fluctuating fortunes of the coal industry." In light of these cases and upon reconsideration of the problem we fail to see a compelling reason to either deny the Trustees' "authority to revise" or to hold their interpretations patently unreasonable. In sum, we do not uphold abusive and "despotic" powers which tend to prostitute the spirit of this Fund but we do affirm what the case law and conscience indicate to be activity within the express language of the Trust Indenture.

Appellant next argues that Gaydosh had qualified, in all respects, under Resolution 10 with the exception of mere "chronological age," and that this qualification clothed him with rights that equity would protect. We do not find this to be so. The age requirement is not merely a procedural device, arbitrarily set and easily waived. It is something more. Economic reality requires a reasonable cut-off date as to age lest the fund be exhausted by comparatively premature retirement. Pragmatically speaking, when a miner retires at the age of fifty-six and seeks to await the tolling of four years before filing for a pension, those years are productively carried by the sweat of the other miners. The record does not disclose how many tons of coal a man produces "for use or for sale" per year. It does indicate that a payment of forty cents (40¢) per ton is earmarked for the Fund and the absence of Gaydosh must mean a proportionate decrease in the worth of the Fund. This is not the case we had in *Danti, supra,* where the applicant, prior to the adoption of Resolution 30, met *all* the requirements of Resolution 10 when he applied for a pension (including age). There we found the disqualification to be arbitrary and capricious due to the fact that the trustees attempted to retroactively apply

2. Kosty v. Lewis, 115 U.S.App.D.C. 343, 346, 319 F.2d 744, 747 (1963).

Resolution 30 to an applicant who already qualified under the necessary standards in effect at the time of his application. Also in *Kosty*, this court again ruled the action of the trustees, in retroactively applying the subsequently adopted Resolution 30 to an applicant who had already qualified under Resolution 10, as arbitrary and capricious. Kosty needed only to retire and apply for he had qualified under Resolution 10 prior to the adoption of Resolution 30. Here Gaydosh had *not* qualified under Resolution 10 at the time of the effective date of Resolution 30 and thus cannot meet the facts of either *Danti* or *Kosty*.

■■ Equity will estop the trustees from procedural gerrymandering in an effort to preclude applicants whose rights have *fully* matured under existing criteria by abruptly switching eligibility signposts without notice. On the other hand, equity will not interfere with reasonable applications of the trustees' discretion under the Trust Indenture. The function of the trustees, on the very face of the indenture, is to preserve the vitality of the fund and to effectively apply its worth to the benefit of as many intended employees as is economically possible. We will not, in the absence of vagarious conduct, disrupt this function, and we can discern no impropriety in that regard with respect to the situation before us.

We have considered the other points on this appeal and find, as to them, no necessity to comment. We do wish to point out, however, that underlying all these determinations is the awareness that the employees are not at a disadvantage vis-a-vis the trustees. The Board of Trustees is chaired by the representative of the Union. He, as well as the other two members, is presumed to conscientiously serve the interests of all parties to the Fund. This court will not seek to interpose its power without clear showings of substandard conduct.

Since we do not so find in this case, we affirm.

Affirmed.