**Thomas LAVELLA, Appellant,**

v.

**W. A. BOYLE et al.**

**No. 24293.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1971.

Decided April 16, 1971.

Mr. Robert C. Handwerk, Washington, D. C., for appellant.

---

Mr. Harold H. Bacon, Washington, D. C., with whom Messrs. Welly K. Hopkins and Joseph T. McFadden, Washington, D. C., were on the brief, for appellees.

Before WRIGHT, MacKINNON and WILKEY, Circuit Judges.

PER CURIAM:

This is an appeal from the District Court grant of a summary judgment for the appellee Trustees of the United Mine Workers of America Welfare and Retirement Fund (1950).[1] Appellant is a retired coal miner who filed an application for pension fund benefits 13 March 1967. The Trustees denied the application on the ground that "appellant has not established proof of twenty (20) years' classified service in the coal industry within the thirty (30) year period immediately preceding the date his application was received," specifically, 13 March 1937 to 13 March 1967. The material and relevant facts do not appear to be in dispute, and the District Court therefore by summary judgment sustained the action of the Trustees. For reasons set forth hereafter, we reverse and remand for trial.

The chronology of appellant's service in the coal mining industry is determinative of his rights here. Appellant, born 10 February 1912, worked for the Shawmut Mining Company or its successor from either August 1928 or August 1929 until 1952, by which time he had contracted such an advanced case of silicosis, the miner's disease commonly referred to as black lung, that he was permanently disabled. He did work part of the year 1953 in the mining industry on so-called "dead work," not inside the mines. He was hospitalized and received treatment which apparently benefited him, as he returned to work for a short period in 1955. By 10 February 1967 he met the age requirement for pension of 55 years and applied shortly thereafter.

Eligibility for pension fund benefits have been set from time to time by resolutions of the Trustees, beginning 5 April 1950. At the time appellant filed his application for fund benefits one of the relevant eligibility requirements read:

> Completed twenty (20) years' service in the coal industry as described in paragraph II A hereof, in the United States, within the thirty (30) years' period immediately preceding the date his application for pension is received at the office of the Trust Fund.

Pursuant to this criterion of eligibility, the pension fund Trustees calculated appellant's service as beginning 13 March 1937, giving him a solid base of unquestioned service through the year 1951, a total of 15 years. To this the Trustees added the maximum credit allowable of four years, during which appellant Lavella received workmen's compensation. To this unquestioned 19 years the Trustees added a one-quarter year credit for the years 1952 and 1955, thus giving him a total of 19½ years' service credit in the 30-year period immediately preceding the receipt of his application. By the Trustees' calculation appellant thus fell short by one-half year.

By appellant's own calculation he had 20¼ years, picking up an additional ¼ year in 1953, in 1955, and possibly in 1956. There is no Social Security or other record of his having received wages in 1956, but in 1953 he did receive $16.66 in wages and in 1955 he received more than the sum calculated as one quarter's pay, but one quarter's credit was all that was allowed by the Trustees. However, we do not base our decision on the additional credit of the two quarters in 1953 and 1955, which would give appellant the full 20 years, but on his status in 1952 when he was forced to quit work because of his advanced silicosis. Lavella never worked anywhere except in the mining industry.

---

1. The fund was created by the National Bituminous Coal Wage Agreement of 1950, as authorized by 29 U.S.C. § 186(c) (5) (1964).

While the eligibility provision in 1967 was as quoted above, the proviso "within the thirty (30) years' period immediately preceding the date his application for pension is received" was only added in 1953. Therefore, prior to 1953, 20 years' service *at any time* would qualify an applicant for a pension. When appellant was permanently disabled by the black lung and unable to work after some time in 1952 (the undisputed record shows he worked one-fourth year and received workmen's compensation for three quarters of the year), appellant had completed between 23 and 24 years' service consecutively in the mining industry for the same company. He had thus completed all of the requirements for a pension except attainment of the age, then age 60 later reduced to 55.

Appellant did not leave the mining industry and work elsewhere, nor did he willingly retire to idleness. He was incapacitated from further work in the mining industry by that disease peculiarly attributable to the conditions under which he worked in the mines, *i. e.*, silicosis or black lung. In February 1954 he underwent a right middle lobectomy because of atelectasis of the right middle lobe, following which he had repeated attacks of respiratory infection with several episodes of bronchial pneumonia and pneumonitis. He was declared disabled and eligible for pension under the Occupational Disease Act of Pennsylvania.

Under these circumstances, while we do not hold that the Trustees' action in 1953 in changing the eligibility standards to require that the 20 years' service in the coal industry must be within the 30-year period immediately preceding the date of application for pension was *per se* arbitrary or unreasonable,[2] nor do we decide its effect on those miners who had not completed 20 years' service by the date of this change in 1953, we hold here that a coal industry employee in the situation of appellant Lavella, who had accrued his 20 years' service prior to the imposition of this additional requirement, and whose failure to work the additional years prior to the age date of eligibility for his pension was due to permanent disability caused by the occupational disease endemic to the mining industry, had sufficiently vested rights in 1952 which could not be cut off by the change in eligibility requirements in 1953.[3]

2. *See* Roark v. Lewis, 130 U.S.App.D.C. 360, 362, 401 F.2d 425, 427 (1968), where we held that the trustees' *interpretation* of a particular pension eligibility requirement was not arbitrary or capricious but remanded for the development of a record on the reasonableness of the requirement itself. Conversely, in the instant case, we find no fault with the eligibility requirement here involved, but view as unreasonable its application to the individual facts of appellant's case.

3. We recognize that in Kosty v. Lewis, 115 U.S.App.D.C. 343, 347, 319 F.2d 744, 748 (1963), we declined to analyze a similar claim in terms of whether "vested" rights were involved. In *Kosty* the issue was whether the changed pension requirements could be invoked to cut off the rights of a pension of a miner who met all prior criteria for a pension except actual retirement from employment at the time the policy was changed. We stated there that:

our interest * * * is directed to the reasonableness of the opportunity afforded to mature pension eligibility under current standards where all that is lacking is the actual termination of employment, rather than debating whether such eligibility should be regarded in substance as already having been matured.

In the instant case, as we point out *infra*, appellant's opportunity to "mature" his pension eligibility, *i. e.*, to apply for and receive a pension upon reaching the required age, was unreasonably denied by the application of the new policy to his case, since he had met all the then extant requirements for a pension except age, and he was prevented by his physical condition from continuing to work in order to fulfill the additional condition for pension eligibility imposed by the changed policy. Our use of the term "vested" in these circumstances is merely a shorthand way of describing this situation.

We have carefully considered our recent decision in Gaydosh v. Lewis[4] and do not find it determinative of the respective rights of appellant and Trustees here. We found Gaydosh's claim to a pension suffered from two defects: (1) He had not worked in the coal industry for a four-year period from 1943 to 1947. The resolution of the Trustees changing the eligibility requirement to include service immediately preceding 29 May 1946 was not arbitrary and unreasonable and did not destroy any rights vested in Gaydosh at that time. (2) Gaydosh *retired voluntarily* at the age of 56. Gaydosh was in a position to continue work, and had he done so, when the eligibility requirements were later changed, he would subsequently have become eligible for a pension. Lavella had no choice; at the time the change which affected him was made, he was permanently disabled by miner's black lung. We pointed out in *Gaydosh* that "economic reality requires a reasonable cut off date as to age lest the fund be exhausted by comparatively premature retirement. Pragmatically speaking, when a miner retires at the age of fifty-six and seeks to await the tolling of four years before filing for a pension, those years are productively carried by the sweat of the other miners. * * * [T]he absence of Gaydosh must mean a proportionate decrease in the worth of the fund."[5] Not so with appellant in the case at bar, who had completed all of his eligibility requirements before the change in the pension regulations to require service within 30 years immediately preceding retirement. And the appellant here did not voluntarily retire from the coal industry and await his attainment of age; he was permanently disabled by the disease endemic to this industry.

Had the appellant made a motion for summary judgment on the undisputed facts in the trial court, we would be in position to decide this case finally on this appeal. However, since appellant has not yet made a motion for summary judgment, we hereby reverse the grant of summary judgment for appellees and remand the cause for trial in the District Court.

So ordered.

---

4. 133 U.S.App.D.C. 274, 410 F.2d 262 (1969).

5. *Id.,* at 277, 410 F.2d, at 265.