**Joseph ASSALONE, Sr., Appellant,**

v.

**Edward L. CAREY et al.**

**Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950.**

**No. 71–1878.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 28, 1972.

Mr. Robert C. Handwerk, Washington, D. C., was on the brief for appellant.

Messrs. Harold H. Bacon, Joseph T. McFadden and Joseph A. Rafferty, Jr., Washington, D. C., were on the brief for appellees.

Before McGOWAN, MacKINNON and ROBB, Circuit Judges.

MacKINNON, Circuit Judge:

This is a proceeding under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970). Appellant Assalone, a resident of Pennsylvania, sues the trustees of the Welfare and Retirement Fund of 1950, United Mine Workers of America, claiming that his application for a pension from that Fund was wrongfully denied and in the alternative that he should be paid the sum of $29,300, same being the monies paid into the Welfare and Retirement Fund because of his efforts.

Appellant's complaint alleges that he has been a member of the United Mine Workers union for a long period of time, that he was born on February 28, 1906; started working in the coal industry in March, 1926 and continued working in the coal industry until January, 1956 when he retired because of ill health. In support of this latter allegation he attaches a certificate of a medical doctor dated "10–28–69" stating that he "was advised to stop working in the coal mines January 6, 1956 because of miner's asthma and anthrosclerosis." Appellant also alleges that for many years the coal company operators by whom he was employed deducted and paid from his wages 30¢ (later 40¢) a ton into the Welfare and Retirement Fund of which the appellees are trustees and that the

total amounts so deducted from his wages was $29,300.

Appellant filed his application for a pension dated October 27, 1969 on January 14, 1970 and it was denied by the "Review Unit, Pension Benefits" on July 6, 1970. The written "Denial of Pension" stated that the

APPLICANT HAS NOT ESTABLISHED PROOF OF TWENTY (20) YEARS' CLASSIFIED SERVICE IN THE COAL INDUSTRY WITHIN THE THIRTY (30) YEAR PERIOD IMMEDIATELY PRECEDING THE DATE HIS APPLICATION WAS RECEIVED AT THE FUND—January 14, 1940 to January 14, 1970.

APPLICANT HAS NOT ESTABLISHED PROOF OF REGULAR EMPLOYMENT IN A CLASSIFIED JOB IN THE COAL INDUSTRY IMMEDIATELY PRIOR TO MAY 29, 1946.[1]

Applicant claims no employment in the coal industry during 1957, 1958, 1959, 1960, 1961, 1962, 1963, 1964, 1965, 1966, 1967, 1968, 1969, 1970; no credit can be given for these years. He has not submitted any evidence to establish that he was employed in a classified job from 1940 through 1956; no credit was given for these years.

In view of the foregoing, he does not meet the requirements set forth in # 1 and # 2 above.

In the event applicant does submit satisfactory evidence to verify employment in a classified job from 1940 through 1956, he still would not meet the requirement outlined in # 1 above.

App. p. 15.

While appellant contends there was something improper in that the Review Unit, instead of the trustees, denied his pension, we see no difficulty with this contention because the denial by the Review Unit is ratified by the trustees in this litigation. With full knowledge of all the facts the trustees in this action adopt the action of the Review Unit as their own.

On the foregoing facts appellant contends that the denial of his pension application was in breach of his rights in the pension fund; that he has reached the age of retirement and is equitably entitled to an award; and that the denial thereof is arbitrary, capricious and illegal. The trustees of the Fund by answer denied the validity of appellant's contentions and subsequently moved for summary judgment. This motion was granted by the district court. The pleadings and the motion set forth the essential facts upon which we must rule.

The following is a copy of Assalone's work record as filed with his retirement application to the fund:

| From | | To | | | Location of Coal Company | | Mine | No. Union | Type |
| Mo. | Yr. | Mo. | Yr. | Name of Coal Company | Town | State | No. | Local | Work |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 3 | 26 | 4 | 28 | Micale Coal Co. | Byrnedale, | Pa. | 42 | | Cutter |
| 4 | 28 | 10 | 32 | Shawmut Mining Co. | St. Marys, | Pa. | 31 | | Loader |
| 11 | 32 | 10 | 36 | Shawmut Mining Co., | St. Marys, | Pa. | 5 | | Motorman |
| 11 | 36 | 3 | 40 | Shawmut Mining Co. | St. Marys, | Pa. | 5 | | Motorman |
| 3 | 40 | 6 | 45 | Glen Fisher Coal Co. | Weedville, | Pa. | —— | | Motorman |
| 11 | 46 | 3 | 47 | P & N Coal Co. | Punxsutawney, | Pa. | —— | | Cutter |
| 4 | 47 | 4 | 48 | Idle. | | | | | Mech. Loader |
| 4 | 48 | 1 | 56 | New Shawmut Mining Co. | St. Marys, | Pa. Cal. | | | Asst. Foreman |

[A8032]

---

1. The date the Welfare and Retirement Fund was established.

After 1956 Assalone worked outside the coal industry until 1969.

Since the inception of the Fund there have been at least three sets of standards promulgated by the trustees governing the eligibility requirements for pensions.

### Resolution 10, effective 1950

The first standards were set out in Resolution 10, which became effective in 1950. We previously summarized these requirements thusly:

> Pursuant to this authority the trustees met on April 5, 1950 and drafted Resolution No. 10 for the purpose of setting guidelines for eligibility for and payment from the Fund. This resolution provided that an applicant shall be eligible for a pension if he (1) has attained the age of sixty (60) years, (2) retired after May 29, 1946, (3) had been employed for one year in the bituminous coal industry immediately prior to retiring, and (4) had completed twenty (20) years of service in the coal industry in the United States.

Gaydosh v. Lewis, 133 U.S.App.D.C. 274, 276, 410 F.2d 262, 264 (1969).

### Resolutions 30, 31 and 32 effective 1953

On January 29, 1953 the prior standards were replaced by Resolution 30. We have summarized the changes thusly:

> On January 28, 1953, the Trustees adopted Resolution No. 30, which superseded Resolution No. 10 as the governing regulation with respect to pension eligibility requirements. The new resolution was made effective forthwith, that is to say, January 29, 1953. The significant change which it made, for purposes of this proceeding, was to prescribe that the requisite 20 years of service must have taken place within the 25-year period immediately preceding the filing of a pension application. A few weeks later, on March 13, 1953, the Trustees, by Resolution No. 31, amended Resolu-

tion No. 30, retroactively effective as of January 29, 1953, by enlarging from 25 to 30 years the period immediately preceding application within which the 20 years of service must have occurred. This change was perpetuated in a further amending resolution, No. 32, adopted by the Trustees on May 12, 1953.

Kosty v. Lewis, 115 U.S.App.D.C. 343, 345, 319 F.2d 744, 746 (1963).

> While these requirements also called for attainment of the age of sixty and establishment of twenty years service in the coal industry, subsection (c) required that the applicant must have "retired from work in the \* \* \* Industry *after* May 28, 1946, *following a period of regular employment in the Coal Industry immediately preceding May 29, 1946. \* \* \*"* (Emphasis supplied.) (J.A. 33.) This meant that should an applicant have met all the other requirements for payment, a pension would not be forthcoming until the applicant could demonstrate that he had worked in the coal industry on the day before May 29, 1946.

Gaydosh v. Lewis, *supra*, 133 U.S.App. D.C. at 276, 410 F.2d at 264.

### Resolution 63, effective 1965

Finally, in 1965 the following Resolution 63 was promulgated:

### RESOLUTION No. 63

\*   \*   \*   \*   \*   \*

I. ELIGIBILITY

\*   \*   \*   \*   \*   \*

B. An applicant who, prior to February 1, 1965, had permanently ceased work in the bituminous coal industry, as an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

1. Attained the age of fifty-five (55) years or over at the date of his application for pension.

2. Completed twenty (20) years' service in the coal industry as described in paragraph IIA hereof, in the United States, within the thirty (30) years' period immediately preceding the date his application for pension is received at the office of the Trust Fund.

3. Permanently ceased work in the bituminous coal industry after May 28, 1946, following regular employment as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, and having been regularly employed in a classified job in the coal industry immediately preceding May 29, 1946.

\* \* \* \* \* \*

## II. DEFINITIONS

A. A year of service.

1. A year of service, as required in paragraphs I A 2 and I B 2 is one during which an applicant:

(a) Worked as an employee in a job classified in the then existing coal wage Agreement for an employer in the coal industry and received wages in an amount equal to the product of one-half the average number of days the mines in the bituminous coal industry in the United States were active, times the daily base rate paid in the bituminous coal industry; provided that if he earned less than the minimum amount required for a full year's service, credit for

service shall be given to the nearest one-fourth year;

\* \* \* \* \* \*

Assalone argues that his benefits should be governed by the first Resolution, No. 10, and that neither Resolution 32 nor 63 should apply to him. It is clear that Assalone would not meet the requirements of those latter resolutions. Thus, he argues that under the rationale of Lavella v. Boyle, 144 U.S.App.D.C. 35, 444 F.2d 910, cert. denied, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971), his benefits should be determined by No. 10. The distinguishing feature is that unlike Lavella, Assalone was not permanently disabled when Resolution 10 was changed and he continued to work in the industry until 1956 when a new set of eligibility requirements was placed in effect (*i. e.*, No. 32, which is essentially the same as No. 63, except that No. 63 provided for retirement at age 55 instead of 60).

The only way one could find that No. 10 still applies to Assalone would be to hold that once a miner has complied with all of a set of pension requirements except for the age requirement, and is subsequently prohibited by disability from complying with more onerous requirements imposed by a subsequent resolution, then the subsequent change in the requirements will be ineffective and he will be entitled to benefits upon compliance with the earlier resolution. However, this position not only goes considerably beyond *Lavella*,[2] but it contradicts specific language in *Gaydosh*, *supra*, 133 U.S.App.D.C. at 277, 410 F.2d at 265, *i. e.*:

Appellant next argues that Gaydosh had qualified, in all respects, under Resolution 10 with the exception of

2. In Lavella v. Boyle, 144 U.S.App.D.C. 35, 37, 444 F.2d 910, 912, cert. denied, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971) (footnotes omitted), we stated: [W]hile we do not hold that the Trustees' action in 1953 in changing the eligibility standards to require that the 20 years' service in the coal industry must be within the 30-year period immediately preceding the date of application for pension was *per se* arbi-

trary or unreasonable, nor do we decide its effect on those miners who had not completed 20 years' service by the date of this change in 1953, we hold here that a coal industry employee in the situation of appellant Lavella, who had accrued his 20 years' service prior to the imposition of this additional requirement, and whose failure to work the additional years prior to the age date of eligibility for his pension was due to

mere "chronological age," and that this qualification clothed him with rights that equity would protect. We do not find this to be so. The age requirement is not merely a procedural device, arbitrarily set and easily waived. It is something more. Economic reality requires a reasonable cut-off date as to age lest the fund be exhausted by comparatively premature retirement. Pragmatically speaking, when a miner retires at the age of fifty-six and seeks to await the tolling of four years before filing for a pension, those years are productively carried by the sweat of the other miners.

Had Assalone met all of the requirements under No. 10 prior to 1953 (when Nos. 30, 31 and 32 were adopted) including the age requirement, then there would be a much stronger case for holding that having qualified under those requirements his pension could not be denied by promulgation of new requirements. This was the situation in Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963), cert. denied, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964), in which we held that to change the requirements without giving an opportunity for filing claims under the old requirements before the new ones went into effect was an abuse of the trust powers granted the trustees, but that is not this case.

The 30-year qualifying period here falls between January 14, 1940 and January 14, 1970, when the application was filed. It is undisputed that Assalone re-tired from the coal industry in 1956 as an assistant foreman. It was thus mathematically impossible for him to meet the 20 out of the prior 30-year requirement since he was not employed in the coal industry during the 14 years immediately preceding the filing of his pension application. There is also no proof in this record that his employment from June, 1948 to January, 1956 as an "Asst. Foreman" was not in a nonclassified position for which no credit is allowed.[3] He thus only proves 7 years' service during his qualifying period. Moreover, Assalone was not permanently disabled when he left the mining industry in 1956. He worked outside the coal industry from 1956 into the second quarter of 1969. He thus presents a substantially different case than Lavella, who qualified in all respects for his pension, with the exception of age, under the resolution in effect when he was forced to retire in 1952 for disability. Under such circumstances we held that he did not have to comply with the changed requirements with which his work-connected disability prevented him from complying. Assalone, however, did not meet the requirements for retirement benefits which were imposed by Resolution 32, in effect when he left the coal industry. He was substantially deficient in years of service within the prior 30 years' period and he failed to meet the requirement of being in regular employment in the coal industry in a classified job immediately preceding May 29, 1946.[4] In Gaydosh, supra, 133

---

permanent disability caused by the occupational disease endemic to the mining industry, had sufficiently vested rights in 1952 which could not be cut off by the change in eligibility requirements in 1953.

3. The application for pension form inquiries: "Were you ever connected with the management or operation of any of the coal companies where you have been employed or did you ever have any financial interest in any company?"

4. See Resolution 30, effective 1953, supra. While we do not base our opinion upon the following calculation, we also note that, if Assalone's employment as assistant foreman is not eligible employment he would not even meet the 20-year requirement of Resolution 10:

| From | Months |
|---|---|
| 3–26 to 4–28 | 25 |
| 4–28 to 10–32 | 54 |
| 11–32 to 10–36 | 47 |
| 11–36 to 3–40 | 40 |
| 3–40 to 6–45 | 63 |
| 11–46 to 3–47 | 4 |
| Total | 233 |

19 years 5 months

U.S.App.D.C. at 274, 410 F.2d at 265, we held that the trustees did not abuse their authority when they amended the retirement requirements to specifically require regular employment in the coal industry immediately prior to May 29, 1946.[5]

We accordingly conclude that the rule we applied in *Lavella* is not applicable to the facts of this case and that it was not arbitrary or capricious for the trustees to apply the eligibility standards of Resolution No. 63 to one in Assalone's position.

As for appellant's complaint that the denial of his claim constitutes an illegal and inequitable forfeiture of approximately $29,300 that he "paid into the trust fund," the actual fact is that plaintiff himself paid no money into the fund. Only the signatory bituminous coal operators contribute to the fund. The trust instrument provides:

> *Title to all the monies paid into and or due and owing said Fund shall be vested in and remain exclusively in the* Trustees of the Fund, and it is the intention of the parties hereto that said Fund shall constitute an irrevocable trust and that no benefits or moneys payable from this Fund shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void. *The moneys to be paid into said Fund shall*

*not constitute or be deemed wages due to the individual mine worker,* nor shall said moneys in any manner be liable for or subject to the debts, contracts, liabilities or torts of the parties entitled to such money, i. e., the beneficiaries of said Trust under the terms of this Agreement. (Emphasis supplied)

The Sixth Circuit in 1958 held that the fund was in the nature of a charitable trust, that present employees who are potential beneficiaries had an "interest" for certain purposes, but that they did not have a "present 'interest' in the trust *res*" for certain purposes. Lewis v. Benedict Coal Corp., 259 F.2d 346, 355 (6th Cir. 1958), rev'd on other grounds, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).[6]

It is thus clear that individual miners do not have a sufficient interest in the actual moneys paid into the fund by the coal operators to justify a claim of forfeiture under the facts here present. Such a claim is denied by the fact that the trust instrument specifically prohibits the beneficiaries from anticipating the benefits, i. e.:

> [N]o benefits or moneys payable from this Fund shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge . . . .

Appellant's claim in this respect must, therefore, also be denied.

Affirmed.

---

5. This requirement has been upheld in Miniard v. Lewis, 128 U.S.App.D.C. 299, 387 F.2d 864 (1967), cert. denied, 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed. 144 (1968); Pavlovscak v. Lewis, 190 F.Supp. 205 (W.D.Pa.1960), aff'd, 295 F.2d 39 (3d Cir. 1961); and in Kough v. Lewis, 195 F.Supp. 657 (W.D.Pa.1961).

6. Though *sui generis*, union welfare funds created under the authority of 29 U.S. C.A. § 186(c), are similar in some respects to charitable trusts. See Van Horn v. Lewis, D.C.1948, 79 F.Supp. 541, 545; Cf. Hobbs v. Lewis, D.C. 1958, 159 F.Supp. 282. As in a true charitable trust, the actual beneficiaries of this fund are not ascertainable. *Present employees who are potential beneficiaries may have an "interest" sufficient to enforce compliance with statutory requirements for administration of the fund,* see Wilkens v. De Koning, D.C.E.D.N.Y.1957, 152 F. Supp. 306, *but it is clear that the agreement did not contemplate vesting the employees with a present "interest" in the trust res so as to warrant a set-off in favor of the settlor.* (Emphasis supplied)
Lewis v. Benedict Coal Corp., 259 F.2d 346, 355 (6th Cir. 1958), rev'd on other grounds, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).