Bruce A. SAUNDERS,

v.

**TEAMSTERS LOCAL 639, EMPLOYEES PENSION TRUST, et al., Appellants.**

No. 79–1851.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 7, 1980.

Decided Oct. 5, 1981.

As Amended Oct. 5, 1981.

Charles R. Both, Washington, D.C., with whom Daniel B. Edelman, Washington, D.C., was on the brief, for appellants.

Edward N. Reiner, Washington, D.C., for appellee.

Before ROBINSON, Chief Judge, McGOWAN, Senior Circuit Judge, and OBERDORFER,* District Judge.

* Of the United States District Court for the District of Columbia, sitting by designation pursu-  ant to 28 U.S.C. § 292(a) (1976).

PER CURIAM:

Appellants, the trustees of a union pension fund, attack a judgment awarding retirement benefits to appellee, a former employee in the trucking industry. The employee's application therefor was denied by the trustees on the basis of an amendment to the fund's eligibility requirements adopted after poor health forced the employee to relinquish his job in the industry. The District Court held that the refusal, without attempted justification, of benefits to an employee who, upon involuntary departure from the industry, satisfied all prerequisites therefor save attainment of age 60 was arbitrary, and could not stand.[1] We affirm.

I

In 1956, collective bargaining between Teamsters Local 639 and the trucking industry culminated in establishment of a retirement plan for union members[2] in conformity with Section 302(c) of the Labor Management Relations Act.[3] As it stood in

1965, the plan specified, as the three requirements for entitlement to benefits, 20 years of continuous service in the industry, five years of continuous service under the plan, and attainment of age 60.[4] In 1966, Bruce A. Saunders, the appellee, was forced to retire at age 50 because of cervical disc disease.[5] Saunders participated in the plan until but not after retirement, and he then met the plan's eligibility standards except age 60.[6] His disability was partial however, and did not prevent him from working outside the industry as a building maintenance supervisor.[7] Since, in effect, an early retiree otherwise qualified for benefits seemingly had only to wait until he reached age 60 to receive them,[8] Saunders expected his pension payments to commence in ten years.

In 1972, however—subsequent to Saunders' exit from the industry but prior to his sixtieth birthday—the plan's eligibility provisions were changed to specify, in Saunders' instance, participation in the plan at or after age 60.[9] Consequently, when

1. *Saunders v. Teamsters Local 639–Employers Pension Fund,* Civ. No. 78–2250 (D.D.C. May 29, 1979), Appendix (App.) 11.

2. See *id.* at 1, App. 11.

3. Labor Management Relations Act of 1947, § 302(c), 29 U.S.C. § 186(c) (1976). This provision excepts from a general prohibition against nonsalary payments by employers to employees those which are made into a fund providing employee health or retirement benefits.

4. Washington Motor Truck Transportation Employees Pension Trust (Sept. 1, 1965), at 2, App. 26; *Saunders v. Teamsters Local 639–Employers Pension Trust, supra* note 1, at 2, App. 12. The plan provided:
   > In order to qualify for a pension you must meet the following conditions:
   > 1. You must be at least age 60.
   > 2. You must have 20 years of continuous service in the industry.
   > 3. You must have 5 years' coverage under the Pension Plan with continuous service during all that period.

   As originally drafted, the plan further provided that applicants must be employed by a participating company. Washington Motor Truck Transportation Employees Pension Trust (Oct. 10, 1962), at 2, App. 18. That requirement was deleted when the plan was revised on September 1, 1965, prior to Saunders' retirement. Washington Motor Truck Transportation Employee Pension Trust (Sept. 1, 1965), at 2, App. 26.

5. *Saunders v. Teamsters Local 639–Employers Pension Trust, supra* note 1, at 1, App. 11.

6. *Id.* at 1, 2, App. 11, 12.

7. *Id.* Saunders also sought disability benefits under the plan, but the District Court affirmed the trustees' decision to deny them because his nonindustry employment demonstrated that he was not totally and permanently disabled, a plan prerequisite. *Id.,* see also Washington Motor Truck Transportation Employees Pension Plan (Sept. 1, 1965), at 5, App. 29.

8. See note 4 *supra.* The plan also stated:
   > You must apply for the pension within 60 days after you have retired. If you do not apply within this period your pension will begin on the first day of the month after you apply.

   Washington Motor Truck Transportation Employees Pension Trust (Sept. 1, 1965), at 3, App. 27. See also Brief for Appellee at 4–5.

9. Washington Motor Truck Transportation Employees Pension Trust (July 1, 1972), at 8, App. 38. See also App. 75.

Saunders turned 60 and sought a pension, the trustees spurned his application.[10] After unsuccessfully pursuing an informal appeal to the pension trust counsel,[11] Saunders initiated suit in the District Court to secure benefits. Following a bench trial, the court held that it was unreasonable to deny Saunders a pension when, after meeting all eligibility requirements then in effect save age, his physical condition compelled his retirement.[12] Accordingly, the court sustained Saunders' claim.[13]

The trustees assail that disposition on two grounds. First, they argue that the District Court exceeded the narrow scope of judicial review available for challenges to administration of funds of this nature,[14] and thereby unduly restricting their discretion as fund managers to revise eligibility requirements over time to insure the fund's effective operation.[15] Additionally, the trustees assert that the decision to grant Saunders a pension is contrary to our prior holdings in this area.[16]

## II

We first consider the trustees' contention that the District Court overstepped the bounds of judicial review obtainable in litigation of this sort. Very recently, in *Robinson v. UMW Health & Retirement Funds*,[17] we examined the obligations statutorily imposed on managers of union health and retirement funds and the extent to which their denials of benefits are subject to judicial scrutiny.[18] A brief summary of

principles articulated there and relevant here is useful.

■ Section 302(c) of the Labor Management Relations Act [19] allows trustees broad discretion to choose among rational alternatives in setting eligibility standards for beneficiaries.[20] That discretion extends, of course, to revision of those criteria in the interest of continued integrity of the fund. But, because the Act casts this authority in fiduciary terms, it implicitly proscribes arbitrary administration.[21] Trustees thus are accountable for procedural fairness,[22] and must support their factual findings by substantial evidence.[23] Additionally, there are substantive limitations on the range of eligibility rules trustees may devise to govern benefit entitlement.[24] Standards appearing facially to deny benefits to employees on whose behalf significant contributions to a fund have been made must be justified by some rational nexus with the fund's purpose.[25] In sum, eligibility rules must have the support of reason, not only in general operation but also in their application to particular retirees.

■ The rule adopted by the trustees in 1972 insists that an employee be a plan participant at or after age 60, else no pension claim can be asserted.[26] Obviously, it excludes Saunders and other employees whose labors brought substantial contributions into the fund, but who were forced into pre-60 retirement by ill health, even though all other preconditions to a pension were met. The trustees have not explained

10. App. 78.

11. See App. 4.

12. *Saunders v. Teamsters Local 639–Employers Pension Trust, supra* note 1, at 2, App. 12.

13. *Id.* (order) (May 29, 1979), App. 14.

14. Brief for Appellants at 5–6.

15. *Id.*

16. *Id.* at 7–13.

17. 205 U.S.App.D.C. 330, 640 F.2d 416 (1980).

18. *Id.* at 334–36, 640 F.2d at 420–422.

19. 29 U.S.C. § 186(c) (1976).

20. *Robinson v. UMW Health & Retirement Funds, supra* note 17, 205 U.S.App.D.C. at 334 & n.26, 640 F.2d at 420 & n.26.

21. *Id.* at 334 & n.27, 640 F.2d at 420 & n.27.

22. *Id.* at 334 & n.28, 640 F.2d at 420 & n.28.

23. *Id.* at 335 & n.29, 640 F.2d at 421 & n.29.

24. *Id.* at 335 & nn. 32–38, 640 F.2d at 421 & nn. 32–38 therein.

25. *Id.* at 335 & n.34, 640 F.2d at 421 & n.34.

26. See text *supra* at note 9.

just how subjection of this group to the changed eligibility standard advances the purposes for which the fund was created.

We recognize, of course, the general importance of age criteria to employee benefit plans. We have declared that

[t]he age requirement is not merely a procedural device, arbitrarily set and easily waived. It is something more. Economic reality requires a reasonable cut-off date as to age lest the fund be exhausted by comparatively premature retirement. Pragmatically speaking, when a[n employee] retires at the age of fifty-six and seeks to await the tolling of four years before filing for a pension, those years are productively carried by the sweat of the other [employees].[27]

We continue our allegiance to these fundamental considerations in any situation where they continue to make good sense. But justification for age requirements as a general matter is not dispositive of this case; there remains the narrower question whether the age standard as altered can rationally be applied to Saunders and other victims of disability compelling earlier retirement.

We need not venture a view as to whether the new rule is *per se* arbitrary, nor need we undertake to gauge its effect on other employees in the trucking industry. The pivotal consideration in this case is that the trustees have not justified the total exclusion of disabled and otherwise qualified under-60 retirees from benefits. For several years after Saunders' forced departure from the industry, employees retiring—

even voluntarily—with the required industry service but no more and usually less participation under the plan than Saunders qualified for benefits so long as they were participants at or after age 60.[28] It has not been shown that inclusion of Saunders' group would affect the financial soundness of the fund, or that some other aspect of the plan would be impacted unduly; in a word, apparent inequity to that group has not been explained away.[29] We thus cannot say that the new rule sets "a reasonable cut-off date as to age"[30] for Saunders and others similarly situated.[31]

We hold, then, that Saunders, who prior to retirement had accumulated 20 years of industry service, more than five of which were under the plan in question,[32] and whose bad health drove him from his industry job before he reached that age, could not be deprived of his pension without an explanation reasoned and buttressed by the purpose and interest of the fund. This conclusion accords with the principle that trustees must act rationally in the management of employee benefit funds.[33] We thus are satisfied that the District Court's decision did not impinge upon any discretion the trustees legitimately may exercise in the selection and revision of eligibility standards for fund beneficiaries.

### III

Contrary to the trustees' contention, our precedents do not call for a different result. The case at bar diverges critically from *Gaydosh v. Lewis,*[34] where we affirmed a

27. *Gaydosh v. Lewis,* 133 U.S.App.D.C. 274, 277, 410 F.2d 262, 265 (1969).

28. It appears that Saunders was a participant in the plan for more than nine years. See App. 78. Employees commencing participation prior to May 1, 1971, and retiring—even voluntarily—at or after age 60 while participants and with 20 years of continuous service in the industry, were entitled to benefits although participation was no more than six years upon retirement after April 1, 1966, seven years after January 1, 1967, eight years after January 1, 1968, or nine years after January 1, 1969. Washington Motor Truck Transportation Em-

ployees Pension Trust (July 1, 1972), at 8–9, App. 38–39.

29. Compare *Robinson v. UMW Health & Retirement Funds, supra* note 17, 205 U.S.App. D.C. at 336, 640 F.2d at 422.

30. See text *supra* at note 27.

31. Compare *Lee v. Nesbitt,* 453 F.2d 1309, 1311–1312 (9th Cir. 1972).

32. See note 28 *supra.*

33. See text *supra* at notes 19–25.

34. *Supra* note 27.

summary judgment for fund trustees who withheld retirement benefits from a miner who at retirement met all existing pension eligibility requirements except that he was less than 60 years old. Before the miner reached that age, the fund's rules were amended to limit pensions to applicants who worked in the industry on a specified date and retired after that date. Because the miner had interrupted his industry employment for three years, during which period the appointed date came and went, we upheld the denial of a pension.[35] But, as we later made clear in *Lavella v. Boyle*,[36] our holding in *Gaydosh* turned on the fact that the miner had retired *voluntarily*. In *Lavella*, fund trustees disallowed a pension application by a miner who retired after satisfying all eligibility requirements except attainment of age 60. As in *Gaydosh* and in the case before us, the rules governing entitlement subsequently were revised in such manner that the miner no longer could have obtained a pension when he reached 60. Because however, the miner was forced to retire when he became permanently disabled by black lung disease, we distinguished *Gaydosh* and sustained his right to the pension.[37]

The trustees attempt to steer the instant case away from *Lavella* and toward *Gaydosh* on the ground that Saunders was disabled only partially, and by an illness unrelated to his industry job, and continued to work outside the industry after retirement.[38] They point to *Assalone v. Carey*,[39] wherein we found the facts—including a miner's partial disability—sufficiently variant from those in *Lavella* to require a different result.[40] In *Assalone*, we held that a miner was ineligible for a pension because at retirement, though for partial disability, he failed to meet not only the fund's age specification but also the additional requirement of 20 years of service in the industry during the 30-year period immediately preceding application for retirement benefits.[41] Thus, the crucial fact was not that Assalone's disability was partial, but that he lacked an essential qualification other than age at the time he retired.[42] When Assalone left his industry job, the fund's eligibility requirements already had been modified in such a way as to disqualify him for retirement benefits irrespective of his age.[43] That was not the case here, for when Saunders retired he possessed all of the qualifications of a pensioner except age, and presumably he would have worked until he reached that age had his health permitted. The logic of our decision in *Lavella* thus is not affected by the distinction between permanent and partial disability.

Our holding today is not to be taken as a retreat from our prior endorsements of flexibility in the administration of health and retirement benefit funds.[44] Periodic revisions of eligibility requirements may be both necessary and proper to insure the successful operation and continued financial integrity of these funds. Moreover, as we noted in *Robinson*,[45] "[s]tandards producing otherwise arbitrary discrepancies may be acceptable where the rule discourages workers from taking *voluntary* action that shifts the burden of supporting the [f]und

**35.** 133 U.S.App.D.C. at 276–277, 410 F.2d at 264–265.

**36.** 144 U.S.App.D.C. 35, 444 F.2d 910, *cert. denied*, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971).

**37.** *Id.* at 38, 444 F.2d at 913.

**38.** See Brief for Appellants at 10.

**39.** 154 U.S.App.D.C. 69, 473 F.2d 199 (1972).

**40.** See *id.* 154 U.S.App.D.C. at 74, 473 F.2d at 204.

**41.** *Id.* at 74–75, 473 F.2d at 204–205.

**42.** *Id.*

**43.** *Id.* at 74, 473 F.2d at 204.

**44.** See, *e.g.*, *Robinson v. UMW Health & Retirement Funds, supra* note 17, 205 U.S.App. D.C. at 334, 640 F.2d at 420; *Gaydosh v. Lewis, supra* note 27, 133 U.S.App.D.C. at 277, 410 F.2d at 265; *Kosty v. Lewis*, 115 U.S.App.D.C. 343, 347–348, 319 F.2d 744, 748–749 (1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964).

**45.** *Robinson v. UMW Health & Retirement Funds, supra* note 17,

to other employees, for instance by retiring early, by leaving the industry, or by working for noncontributing employers." [46] But a rule otherwise unobjectionable becomes legally unacceptable when it penalizes workers for early retirement compelled by illness or disability after satisfying all existing eligibility requirements save age, and no justification for that treatment is demonstrated.

The judgment appealed from accordingly is

*Affirmed.*

---

46. *Id.* at 335, 640 F.2d at 421 (emphasis supplied) (footnotes omitted).