**Dante F. FONTECCHIO, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, a labor organization doing business in Colorado, Defendant.**

**Civ. A. No. 77–K–1156.**

United States District Court,
D. Colorado.

Sept. 26, 1979.

John B. Ciccolella, Colorado Springs, Colo., for plaintiff.

Phillip Hornbein, Jr., Hornbein, MacDonald & Fattor, Denver, Colo., George H. Cohen, Jeffrey L. Gibbs, Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action in contract for disability and retirement benefits. Jurisdiction is based on original jurisdiction under 29 U.S.C. § 185(a), civil actions arising under the laws of the United States. Pursuant to the provisions of 28 U.S.C. § 1441(a)—upon defendant's petition—this action was removed to this court. This matter is currently before the court on plaintiff's and defendant's motions for summary judgment.

Plaintiff, Fontecchio, alleges that under the pension plan adopted by District 50, United Mine Workers of America, defendant, United Steelworkers of America, became obligated to provide retirement-pension benefits to plaintiff upon his reaching retirement age. It is alleged further that termination of plaintiff's temporary disability benefits by defendant, constituted arbitrary and capricious conduct in breach of defendant's unilateral contract with plaintiff. Plaintiff prays for relief in the form of back disability pension benefits, interest, retirement-pension benefits and attorney's fees and costs.

The record in the case reveals the following facts. On or about December 31, 1961, plaintiff, Fontecchio, was unable to perform his work as field representative for District 50. His disability was the result of a stroke which occurred on or about December 31, 1961; this stroke was followed by heart attacks which occurred on or about February 12, 1962. From the time of the stroke until May 1, 1963, plaintiff was continued on the District 50 payroll at full salary even

though he was unable to perform his regular duties. Effective May 1, 1963, President Moffett of District 50, placed plaintiff on the status of temporary disability pensioner. By virtue of this status, plaintiff became entitled to receive disability benefits of $100 per month. Plaintiff received these payments from May 1, 1963 to April 30, 1966. On April 14, 1966, plaintiff received notice that his temporary disability benefits would cease. Plaintiff did not protest termination of these payments when notified that they would no longer be made. As of April 30, 1966, plaintiff had completed 13 years, 11 months, 29 days, accumulated service for District 50.

In August 1972, District 50 merged with the United Steelworkers of America. "[Under the merger agreement], former employees of District 50 who were active employees at the time of the 1972 merger and who had not retired prior to the date of merger are now being treated as Steelworkers former employees for pension purposes."[1]

In a letter to I. W. Abel, dated November 27, 1976, plaintiff inquired about his entitlement to a retirement pension. In response to plaintiff's inquiry, defendant denied that plaintiff was entitled to a retirement pension.

Plaintiff alleges that under terms of the District 50 Pension Plan, his rights to retirement benefits vested when he was placed in the status of a temporary disability pensioner and that upon his reaching retirement age he became entitled to retirement benefits. Effective July 1, 1950, the President of District 50, unilaterally established a non-contributory Pension Plan covering "all regular full-time employees" of District 50. The amended eligibility provisions, effective August 7, 1963, provide:

"*Section 1.* Any employee of the employer may elect to retire from its employment upon attaining the age of sixty-two (62) years . . . provided he has been employed by the employer for a period of ten (10) years next preceding his attaining the age of sixty-two (62) years . . . or, he may retire at any time after attaining the age of sixty-two (62) . . . whenever he shall have been employed by the employer for a period of ten (10) years or more.

*Section 2.* Nothing in the Plan shall be construed as requiring the employer to retain any employee until he qualifies for pension hereunder."[2]

Although the terms of the pension plan require that a person be an employee in order to be eligible for retirement benefits, those administering the plan have interpreted it not to preclude automatically persons who are not actively employed when they reach retirement age. The plan does not provide disability benefits for disabled employees, but the president of District 50, possessed the discretion to place disabled employees on temporary disability status. An employee so designated, in addition to receiving disability payments out of general treasury funds, was treated as a continuing employee. It has been the practice of District 50 to transfer administratively onto the rolls of old-age pensioners employees who remained on temporary disability status until retirement age.

Plaintiff contends that once he was placed on temporary disability status he acquired a deferred vested benefit. In support of his allegation, plaintiff relies on *Lavella v. Boyle*, 144 U.S.App.D.C. 35, 444 F.2d 910 (C.A.D.C.1971). In *Lavella*, an amendment to the eligibility provision required claimant to have accumulated 20 years service within the 30 year period immediately preceding the date of application for pension. The court held:

. . . Lavella, who had accrued his 20 years service prior to the imposition of this additional requirement, and whose

---

1. Answer to Plaintiff's Request for Admissions No. 14.

2. Affidavit of Thomas F. Carpenter in support of defendant's motion for summary judgment, ¶ 7 and 8 at p. 3. (The only relevant changes made by the amendment were to decrease the eligibility retirement age from sixty-five (65) to sixty-two (62) and to increase the years of service requirement from five (5) to ten (10) years.

failure to work the additional years prior to the age of eligibility for his pension was due to permanent disability caused by occupational disease . . . had sufficiently vested rights in 1952 which could not be cut off by the eligibility requirements in 1953.

In reaching this conclusion the court found that plaintiff's right to benefits was vested because he had met "all the then extant requirements" for pension except age before the additional condition was added. *Lavella, supra,* 144 U.S.App.D.C. at 37, 444 F.2d at p. 912.

Plaintiff is correct in asserting that *Lavella, supra,* stands for the proposition that changes in pension plan eligibility requirements subsequent to rights vesting will not bar a claimant's right to receive benefits. In *Gaydosh v. Lewis,* 133 U.S.App.D.C. 274, 410 F.2d 262 (C.A.D.C.1969), the court stated that, "[e]quity will estop the trustee from procedural gerrymandering in an effort to preclude applicants whose rights have *fully matured* under existing criteria by abruptly switching eligibility signposts without notice." (Emphasis added.)

The instant case can be distinguished from the above-mentioned cases. As the courts in both *Lavella, supra,* and *Gaydosh, supra,* emphasized, claimants rights did not vest until they had fulfilled all of the eligibility requirements except for age. Plaintiff, Fontecchio, did not fulfill the eligibility requirements set forth in the District 50 Plan. Plaintiff was not an employee at the time he applied for retirement benefits; a condition contained within the Plan. "It is also well settled that . . . [upon] performance of all the conditions [in the pension plan] employee's right to pension benefits vests and there is a binding unilateral contract." *Hardy v. H. K. Porter Co., Inc.,* 417 F.Supp. 1175, 1183, (E.D.Penn.1976); and *Hurd v. Illinois Bell Telephone Company,* 234 F.2d 942 (7th Cir. 1956). And it is the general rule that employees' rights to pension benefits are measured by the terms of the plan established by the employer. *Craig v. Bemis Company, Inc.,* 517 F.2d 677, 681 (5th Cir. 1975); and *Smith v. Union Carbide Corp.,* 350 F.2d 258 (6th Cir. 1965). The District 50 Plan clearly provides that a claimant must be an employee when he applies for benefits in order to be entitled to a retirement pension.

■ In *Dishner v. Moffett,* No. 1063–72 (D.C.1974), a class action suit involved as plaintiffs former District 50 employees who had retired before they reached retirement age but after they had accumulated the service time necessary to become eligible for retirement benefits. It was held that an employee did not acquire a vested right to a pension benefit because he had worked 10 years for District 50. Under the terms of the District 50 Pension Plan, in order to be entitled to retirement benefits, the employee had to have been in the union's employ when both the age and service requirements were met. This conclusion is binding on plaintiff under F.R.Civ.P. Rule 23(b)(2). Also *see, Alexander v. Aero Lodge No. 735, Intern. Ass'n., Etc.,* 565 F.2d 1364 (6th Cir. 1977); *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975); and *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir. 1975).

■ In the instant case, plaintiff acquired no deferred vested benefit right when he was placed on temporary disability pensioner status. When an employee such as plaintiff became disabled the President of District 50 had the discretion to keep the employee on full salary, to place the employee on temporary disability status or to terminate the employee. The President of District 50 also retained the discretion to remove an employee from temporary disability status.[3] Thus when District 50 President Moffett terminated plaintiff's disability payments, his status as a disability pensioner ended; his status as a continuing employee for retirement benefit purposes also ended.[4]

---

**3.** Response to Plaintiff's Request for Admission No. 6; and Affidavit of Thomas F. Carpenter in support of Defendant's Motion for Summary Judgment, ¶ 12, p. 6.

**4.** Response to Plaintiff's Request for Admission No. 6, and Affidavit of Thomas F. Carpenter in support of Defendant's Motion for Summary Judgment, ¶ 16 and ¶ 17, p. 7.

 

In summary, the key issue in the instant case was whether plaintiff, Fontecchio, remained an employee even though his disability benefits were terminated. Plaintiff does not present persuasive proof to support his allegation.[5] In addition, administrators of pension plans are accorded considerable deference to interpret the terms of pension plans. *See, Lowenstern v. International Ass'n. of Mach. and Aero. Wkrs.*, 479 F.2d 1211 (C.A.D.C.1973); *Miniard v. Lewis*, 387 F.2d 864 (C.A.D.C.1967); and *Gaydosh v. Lewis, supra.* In denying plaintiff's claim, the administrators interpreted the term employee, as used in the Pension Plan, so as not to include persons who received disability payments and who were placed on temporary disability status but who had their disability payments terminated prior to retirement age.[6] ". . . [E]ven assuming plaintiff's construction [was] reasonable, as between two competing interpretations of the Plan, we are bound by that of the administrators if it is not arbitrary and capricious." *Lowenstern v. International Ass'n. of Mach. and Aero. Wkrs., supra;* also *see, Miniard v. Lewis, supra.*

The District 50 Pension Plan vests plan trustees with full authority to administer the plan; included is authority to determine eligibility requirements and which claimants are eligible to receive retirement benefits.[7] Trustees of a pension fund must be sustained as a matter of law unless a plaintiff can prove that the action taken by the administrators was arbitrary and capricious. Plaintiff has failed to demonstrate that this rule is inapplicable in the instant case. See F.R.Civ.P. Rule 56(e).

Plaintiff also asserts a claim for past disability payments. For the reasons stated in part two of Defendant's Brief in Support of Motion for Summary Judgment, this claim is denied.

IT IS ORDERED that defendant's motion for summary judgment is hereby granted, and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is hereby denied, and

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

---

**5.** F.R.Civ.P. Rule 56(e) provides: "When a motion for summary judgment is made and it is supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him."

Also *see, Wilt v. GTE International Systems Corp.*, 82 F.R.D. 686 (D.Colo. June 4, 1979).

**6.** Response to Plaintiff's Request for Admission No. 6, p. 3 and 4.

**7.** Response to Plaintiff's Request for Admission No. 4, p. 2; and Affidavit of Thomas F. Carpenter in support of Defendant's Motion for Summary Judgment, ¶ 4, p. 2.