**Alfred STACEY, Appellant,**

v.

**Harrison COMBS, et al.**

No. 81–1562.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 1982.

Decided Feb. 19, 1982.

David J. Frantz, Washington, D.C., for appellant.

William F. Hanrahan, Washington, D.C., with whom E. Calvin Golumbic, Washington, D.C., was on the brief, for appellees.

Before WRIGHT, MacKINNON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge.

Appellant Alfred Stacey, a retired coal miner, applied for retirement benefits from the United Mine Workers of America 1950 Pension Trust and 1950 Benefit Plan and Trust ("Pension Trusts") on April 30, 1973. His application was denied by the Trustees of the Pension Trusts ("Trustees") and he filed this suit alleging that denial of his application was arbitrary and capricious. The District Court granted summary judgment for the Trustees, and this appeal followed. For reasons set forth hereafter, we vacate the judgment of the District Court and direct that it order the Trustees to award appellant his benefits as requested.

I

Stacey is an 85-year-old former coal miner who became permanently disabled and was forced to retire in July, 1972, because of pneumoconiosis (black lung) developed towards the end of more than 50 years of service in the coal industry. Upon his retirement, he was awarded workmen's compensation benefits due to his disability (JA 39), and in addition was awarded black lung benefits effective May, 1972, under the Federal Coal Mine Health and Safety Act of 1969 (JA 43).

Appellees, members of the Board of Trustees of the Pension Trusts, are legal successors to the United Mine Workers of America Welfare and Retirement Fund of 1950. The Welfare and Retirement Fund was originally established as an irrevocable trust under the National Bituminous Coal Wage Agreement of 1950 under the authority of Section 302(c) of the Labor-Management Relations Act of 1947, and was financed by payments of royalties from bitu-

minous coal operators signatory to the 1950 Contract. The present Pension Trusts are irrevocable Trusts established by the National Bituminous Coal Wage Agreement of 1974 (the "Agreement") and are also financed in part by payment of royalties from bituminous coal operators. These Trusts provide for pension and health benefits to retired coal miners. Pursuant to statute, the Trustees are vested with full authority, barring arbitrary and capricious abuse thereof, to establish eligibility criteria for such benefits. *Roark v. Boyle*, 439 F.2d 497 (D.C.Cir.1970).

Stacey applied for retirement benefits from the Pension Trusts on April 30, 1973 (JA 40). As of that day, his retirement request was governed by Resolution 83, which provided that a retired coal miner who had reached the age of 55 years was eligible for benefits if he had performed 20 years of service in classified (non-supervisory) positions, *including five years with coal operators signatory to the Bituminous Coal Wage Agreement.* (JA 49–54). Paragraph II.A.1.(b) of the Resolution specifically provides that a pension applicant may count time on workmen's compensation after retirement toward the total years of *signatory service* up to a maximum of four years.[1]

Upon receipt of Stacey's application for benefits, the Trustees determined that Stacey had accumulated 25¾ years of classified service credit, including 3¾ years with sig-

natory operators. (JA 44). In order to qualify for benefits pursuant to Resolution 83, Stacey, as of April 30, 1973, needed 1¼ additional years of signatory service credit. By the credit calculation terms of Paragraph II.A.1.(b), he would have satisfied that requirement on February 15, 1974, merely by continuing to receive the workmen's compensation for another 10½ months.

The controversy in this case arises out of the adoption by the Trustees on *October 18, 1972*, of so-called Resolution 90. (JA 67–68). Stacey, as above stated, had been forced to retire in July, 1972, during the period that Resolution 83 was in effect and about three months before the adoption of Resolution 90. Since he was permanently disabled it was *certain* that he would continue to receive his workmen's compensation and thereby become entitled to the benefits under the agreement in 10½ months from the date of his timely application for benefits. The new resolution however supplanted Resolution 83 in certain respects. It retained the 20 year classified service and five year signatory service requirements, but added a provision that receipt of workmen's compensation would only count towards signatory service credit *if the applicant already had ten years of signatory service.* (JA 72–73, 75). Resolution 90 originally provided that it would become effective on November 1, 1972, but its implementation was enjoined in *Blank-*

---

1. This provision defines a year of service in the coal industry to include a calendar year during which the applicant:

    (b) Received state workmen's compensation payments pursuant to an award as a result of an occupational disease or injury sustained in a mine while regularly employed in a classified job for an employer signatory to the bituminous coal wage agreement then in effect, provided applicant did not work regularly in jobs outside the coal industry during the compensable period, subject to a maximum of four (4) years' service credit from date of injury, or from the date of last employment in case of occupational diseases. Benefits awarded pursuant to the Federal Coal Mine Health and Safety Act of 1969 shall be deemed "workmen's compensation

payments" within the meaning of this section, only if the miner was last regularly employed in the coal industry after the enactment date of the Act, December 30, 1969, in a classified job for an employer signatory to the bituminous coal wage agreement then in effect.

The resolution also provides that an employee will receive a year's credit for any calendar year during which he received state workmen's compensation or federal black lung benefits in a minimum of at least six months. If he received these benefits for less than six months, then credit is "awarded to the nearest one-fourth (¼) year, based upon service in six (6) months equalling a year's service." Resolution 83, Paragraph II.A.1.(b) and Paragraph II.A.1.(a)(2).

enship v. United Mine Workers of America Welfare and Retirement Fund of 1940, Consolidated Civil Action Nos. 2186–69 and 2350–69 (D.D.C.) (JA 3, 8). Thereafter, the injunction was dissolved, and the Trustees implemented Resolution 90 effective January 1, 1973. (JA 80). Applicants for benefits were given a grace period of four months, during which time their requests could be considered under either Resolution 83 or Resolution 90. Applications during the grace period under Resolution 83, however, were restricted by the terms of Resolution 90 in that calculations of signatory service credit could not be based on time during which workmen's compensation was received after December 31, 1972, unless the applicant already had been credited as of that date with ten years of signatory service.

Stacey filed his application on April 30, 1973, the last day of the grace period. In a letter from the Trustees dated September 8, 1975, Stacey was informed that his application had been denied. In particular, the Trustees noted that his 25¾ years of classified service (including 3¾ years of signatory operation) did not satisfy the requirements of Resolution 83. (Defendant's Exhibit A at 87). Stacey requested a hearing, which was held on May 7, 1979. At the hearing, Stacey challenged the Trustees' decision with respect to several periods when credit had been denied on the ground that he had been a non-classified supervisor. The hearing officer concluded that Stacey had not met his burden of proof on signatory service. Thereafter, Stacey's application was again denied. (JA 44–45).

On July 9, 1980, Stacey brought this action in the District Court. He did not directly challenge the credit calculation of the Trustees, but argued instead that he had satisfied the signatory service requirement of Resolution 83 pursuant to Paragraph II. A.1.(b) through receiving sufficient workmen's compensation after retirement, or, in the alternative, that he would have satisfied that requirement in due course had Resolu-

tion 90 not redefined the means of accumulating signatory service credit. Invoking Resolution 90 to block his application at a time when he had retired for permanent disability and to freeze his ability to satisfy the requirements of Resolution 83 by continuing to receive workmen's compensation payments that in ten and one-half months would inexorably satisfy the signatory service requirement under the resolution in effect when he retired and qualify him for retirement benefits, he argued, was arbitrary and capricious.

By Order dated April 23, 1981, the District Court granted summary judgment for the Trustees. (JA 37). The memorandum which accompanied the order held that Stacey's request was denied because he had not accumulated enough signatory service credit as of December 31, 1972, the day Resolution 83 ceased to exist, and because Resolution 90, effective January 1, 1973, barred him from accumulating any more such credit in the future. Applying Resolution 90, the District Court ruled, was not arbitrary and capricious insofar as such an action "does not deprive Stacey of any earned pension credit." (JA 34–35; emphasis in original).

Stacey then filed this appeal.

## II

This Court has previously decided cases with similar facts and has found that the denial of pension benefits was arbitrary and capricious. In Lavella v. Boyle, 444 F.2d 910 (D.C.Cir.1971), a former coal miner (Lavella) petitioned for retirement benefits 15 years after his forced retirement due to black lung. When he retired he satisfied all of the requirements for pension benefits, except age, specified by the then applicable Trustees' resolution. Specifically, the resolution existing at the time of his retirement provided that applicants 55 years or older with twenty years of service in the coal industry were eligible for the benefits in question. Lavella was 40 years old and had satisfied the 20 year requirement when he

retired in 1952. In 1953, the Trustees amended the eligibility requirements by stipulating that pension applicants must have served 20 years in the coal industry *within thirty years of their application.* When Lavella reached the age of 55 in 1967, he applied for pension benefits under the eligibility requirements of 1952, the year he retired. The Trustees rejected his application, saying that he had not fulfilled the requirements of the *1953* amended resolution. This Court found the Trustees' action arbitrary and capricious, because Lavella would qualify for pension benefits under the Trustees' resolution in effect on the day he retired by the inexorable passage of time. Lavella, in short, "had sufficiently vested rights in 1952 which could not be cut off by the change in eligibility requirements." 444 F.2d at 912.

■■ This Court reached a similar result in *Saunders v. Teamsters Local 639, Employees Pension Trust et al.,* 667 F.2d 146 (D.C.Cir.1981). In *Saunders,* the appellant had retired from the trucking industry at age 50 due to a partial disability. At the time of his retirement, he satisfied all eligibility requirements for pension benefits except for the attainment of the age of 60. Subsequent to Saunders' retirement, but prior to his reaching the age of 60, the eligibility requirements were amended to require participation in the Plan at age 60. Upon that amended requirement, when Saunders applied at age 60 his application was denied because he was not then a participant in the Plan. This Court found, as in *Lavella,* that such a denial of benefits under the requirements that had been altered after his retirement was arbitrary and capricious. Acknowledging that the Trustees did have discretion to alter benefit eligibility requirements, we nevertheless ruled:

> But a rule otherwise unobjectionable becomes legally unacceptable when it penalizes workers for early retirement compelled by illness or disability after satisfying all existing eligibility requirements

save age, and no justification for that treatment is demonstrated.

At 151. Here again, the applicant required to retire because of permanent disability would have become eligible for pension benefits after a finite period of time had elapsed. Stacey had satisfied the 20 year classified service requirement set out in Resolution 83, and would, *with the mere passage of time (ten and one-half months),* have satisfied the 5 year signatory service requirement, in effect when he retired, by continuing to receive workmen's compensation for his disability. Under the law these payments were fixed and in view of Stacey's condition were certain to continue. We, therefore, hold that Stacey's pension rights under Resolution 83 had "sufficiently vested," and that the Trustees therefore had exceeded their authorized discretion by invoking Resolution 90 to deny his application. After workers have retired and unalterably changed their ability to satisfy new eligibility requirements for pension benefits, it is arbitrary and capricious for the managers of a pension trust to change the eligibility requirements for benefits against those retired workers who, given the continuance of their factual situation and the inexorable passage of time, would qualify for benefits under the requirements existing at the time of their retirement and upon which they relied. In keeping with *Lavella* and *Saunders,* we vacate the judgment of the District Court and direct that it order the Trustees to award Stacey the pension benefits requested.

*Judgment accordingly.*