Edward SHAW, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS PENSION PLAN; Joseph Manners, Eugene Glover, Justin Ostro, William Winpisinger and George Poulin as fiduciaries and trustees of the International Association of Machinists and Aerospace Workers Pension Plan, Defendants.

No. CV 81–6076–AAH.

United States District Court, C.D. California.

May 9, 1983.

Ronald Dean, Los Angeles, Cal., for plaintiff.

Rose, Klein & Marias by Alfred M. Klein, Los Angeles, Cal., and Donaldson & Kiel by Richard P. Donaldson, Seattle, Wash., for defendants.

HAUK, Senior District Judge.

These cross motions for summary judgment came on regularly for hearing on April 4, 1983. Plaintiff, by his motion, is seeking to reverse action taken by the defendants in "phasing out" the cost-of-living feature in his pension plan. Defendants seek affirmance of their having amended this cost-of-living feature out of the plan. Stipulated facts form the basis of these motions and both parties concede that the case may be disposed of as a matter of law.

## FACTUAL BACKGROUND

Plaintiff, Edward Shaw, retired as a District Lodge Business Representative of the International Association of Machinists and Aerospace Workers (hereafter IAM) on January 1, 1975, following 10 years of service. At the time of plaintiff's retirement his pension plan included a cost-of-living feature referred to as a "living pension." Under the living pension feature, increases in the retiree's pension were indexed to salary increases in the position the retiree held immediately prior to retirement.

In September, 1976, the delegates to the quadrennial IAM convention voted to amend the pension plan provisions of the constitution so as to phase out the living pension feature. This phase-out provided that the full percentage adjustment would be paid to retirees in 1977 and 1978, but thereafter, the living pensions adjustments would be as follows:

1979 and 1980—75% of full adjustments

1981 and 1982—50% of full adjustments

1983 and 1984—25% of full adjustments

After December 31, 1984—no further adjustments. The decision to phase the living pension feature out of the plan came after the IAM's actuaries had advised it that, if the pre-phase-out course should continue, the plan would suffer serious financial instability.

Plaintiff bases his motion for summary judgment on the following three theories: (1) that the phasing-out of the living pension feature of the plan violated the proscription in the Employee Retirement Income Security Act, 29 U.S.C. 1001 et seq.

(hereafter ERISA) against any amendment which would decrease the accrued benefits of a participant under the plan; (2) that the phase-out constituted a breach of the fiduciary duty which the plan trustees and administrators owed the plaintiff; and (3) that the phase-out violated established principles of contract law.

On the other hand, the basis for defendants' motion is: (1) that the 1976 amendment did not amount to a diminution of an "accrued benefit" under ERISA and, (2) even if the amendment did somehow affect an accrued benefit, it was fully justified under ERISA. In addition, defendants resist plaintiff's contention that the latter's claim properly sounds in an action for breach of a fiduciary duty or breach of contract.

## DISCUSSION

Given the interdependence of the motions before the Court, the various contentions raised by the parties will be considered concurrently.

## I. PLAINTIFF'S ERISA CLAIMS

■ As previously indicated, the plaintiff alleges that the 1976 amendment violates ERISA, 29 U.S.C. § 1054(g), which provides:

The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title.

Defendants initially argue that their action does not run afoul of ERISA because the living pension feature of plaintiff's plan does not amount to an "accrued benefit" within the definition of that term in ERISA. As provided in 29 U.S.C. § 1002(23):

The term "accrued benefit" means

(A) In the case of a defined benefit plan, the individual's accrued benefit determined under the plan and ... expressed in the form of an annual benefit commencing at normal retirement age.

Defendants argue that this language embraces only benefits promised upon retirement and does not include post-retirement benefits such as the living pension feature. Plaintiff, on the other hand, contends that an accrued benefit may be expressed in the form of a *formula*. While relevant authority on this issue is sparse, plaintiff's argument appears to be the more meritorious. For example, section 411(a)(7)(A)(i) of the Internal Revenue Code defines the term "accrued benefit" in precisely the same words as section 1002(23) of ERISA. The Internal Revenue Service through a Technical Information Release has stated:

IRC section 411(a)(7)(A)(i) provides, in part, that in the case of a defined benefit plan, the "accrued benefit" must be expressed in the form of an annual benefit commencing at normal retirement age. *The plan must provide a formula under which each participant's actual accrued benefit under the plan can be determined in each plan year.*

Internal Revenue Service T.I.R. No. 1403 (Sept. 17, 1975) (emphasis added). In addition, there is case law suggesting that an accrued benefit may be expressed by a formula as opposed to a sum certain that the pensioner will receive upon retirement. *Janowski v. International Brotherhood of Teamsters,* 500 F.Supp. 21, 23 (N.D.Ill.1980). In *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, at 914 (2d Cir.1982), the Second Circuit held:

... the plan must specify the basis on which payments are to be made to participants and beneficiaries so as to meet the legislative purpose of having each participant know exactly where he stands with respect to the plan.

The IAM's own pension plan booklet states:

ADJUSTMENT OF PENSION AMOUNT AFTER RETIREMENT

If, after your retirement, the salary for the position you held immediately prior to your retirement is changed, the amount of your pension will be adjusted accordingly. The change in pension amounts, however, will not be retroactive.

IAM Pension Plan (Wash.D.C.1969), p. 10.

In addition, Article XIV, section 7 of the Constitution of the International Associa-

tion of Machinists and Aerospace Workers provides in pertinent part:

### Computation of Pension

Pensions being paid to previously-retired officers and employees shall be adjusted by applying the appropriate foregoing percentage to the straight-time compensation for the classifications or positions corresponding to those in which they were employed immediately prior to their retirement, provided, however, that in no case shall any such adjustment be made on a retroactive basis, nor increase any benefit to a survivor or beneficiary then being paid. Effective January 1, 1973, neither shall any such adjustment result in a pension payment which is less than the amount paid to the retiree at the time of retirement.

IAM Constitution (Wash.D.C.1974), p. 39. Applying the above language against the various authorities which permit accrued benefits to be expressed through a formula, the conclusion is inescapable that the living pension feature was an integral part of the formula through which the plaintiff's accrued benefits were expressed. Defendants' attempts to distinguish the living pension from other components of the retirement compensation formula are, accordingly, void of merit.

■ Having determined that the living pension feature constitutes an accrued benefit, the next matter which must be addressed is whether the act of defendants in decreasing the accrued benefit of plaintiff was justified under ERISA.

As previously pointed out, 29 U.S.C. § 1054(g) forbids any amendment which would decrease the accrued benefit of a plan participant with the exception of an amendment effected pursuant to 29 U.S.C. § 1082(c)(8)(C) which provides:

(8) For purposes of this part, any amendment applying to a plan year which—(C) does not reduce the accrued benefit of any participant determined as of the time of adoption except to the extent required by the circumstances, shall, at the election of the plan administrator, be deemed

to have been made on the first day of such plan year. *No amendment described in this paragraph which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary notifying him of such amendment and the Secretary has approved such amendment or, within 90 days after the date on which such notice was filed, failed to disapprove such amendment. No amendment described in this subsection shall be approved by the Secretary unless he determines that such amendment is necessary because of a substantial business hardship (as determined under section 1083(b) of this title) and that waiver under section 1083(a) of this title is unavailable or inadequate.* (emphasis added).

Moreover, Section 1082(c)(8)(C) is found in Part 3 of ERISA which contains the funding provisions. The effective dates for Part 3 are located in section 1086 and subsection (e) of that section provides:

In the case of a plan maintained by a labor organization which is exempt from tax under section 501(c)(5) of Title 26 exclusively for the benefit of its employees and their beneficiaries, this part shall be applied by substituting for the term "December 31, 1975" in subsection (b) of this section, the earlier of—

(1) the date on which the second convention of such labor organization held after September 2, 1974 ends, or

(2) December 31, 1980,

but in no event shall a date earlier than the later of December 31, 1975, or the date determined under subsection (c) of this section be substituted.

The IAM is a tax exempt labor organization which maintains its pension plan exclusively for the benefit of its employees and their beneficiaries. It did not hold its second convention until September, 1980. Thus, contend the defendants, the procedure embodied in section 1082(c)(8)(C) was inapplicable to them since the amendment to the plan was effected four years prior to the effective date of this provision. Defendants further argue that the delayed applica-

bility of the section 1082(c)(8)(C) procedure effectively creates a "grace period" for tax exempt labor organizations from the section 1054(g) prohibition against amendments decreasing the accrued benefits of a plan participant.

The defendants' arguments are unpersuasive for various reasons. First, section 1054(g) is found in Part 2 of ERISA, the provisions relating to participation and vesting. The effective dates for Part 2 are found in section 1061. Section 1061 provides no postponement of or exemption from applicability of the provisions located in Part 2 of ERISA for tax exempt labor organizations and no cross-reference is made to Part 3. It thus becomes apparent that Congress did not intend to create a "grace period" to insulate defendants from the applicability of section 1054(g) and that the September, 1976 amendment was properly subject to the proscription embodied therein.

The prohibition set forth in section 1054(g) is absolute, absent compliance with the section 1082(c)(8)(C) procedure. While the defendants argue that this procedure was unavailable to them at the time of the 1976 amendment because they had not yet held their second convention subsequent to September 2, 1974, there was nothing to prevent them from at least making application to the Secretary of Labor to demonstrate their good faith or even seek declaratory relief in the courts. In addition, had their effort to apply to the Secretary been resisted as premature, defendants had available a procedure for calling an emergency convention under Article II, section 1 of the IAM Constitution.[1]

In sum, while the section 1082(c)(8)(C) procedure was not applicable to the defendants at the time of the 1976 amendment because of the special effective dates for tax exempt labor organizations, the effective date of the Part 3 funding provisions cannot be applied to the Part 2 participation and vesting provisions where section 1054(g) is located. It is thus apparent that the actions of defendants in attempting to phase-out the living pension feature in the pension plan were not justified under ERISA and constitute diminution of plaintiff's accrued benefits under the plan.

## II. PLAINTIFF'S CLAIM OF BREACH OF FIDUCIARY DUTY

The IAM pension plan is administered by five of the defendants named in this action in their capacity as "fiduciaries and trustees" of the plan. While defendants suggest that the administrators of the plan are not true fiduciaries, the Court finds this argument untenable. Officials of a company which sponsors a plan are themselves fiduciaries to the extent that they retain authority for selection and retention of plan fiduciaries because, to that extent, they have retained discretionary authority or discretionary control respecting management of the plan. *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 640 (W.D.Wis. 1979). If such non-trustee officials are to be considered fiduciaries, then *a fortiori* union officials who are administrators and trustees of the plan are fiduciaries. Pension trustees are obligated to act for the sole and exclusive benefit of the trust beneficiaries. *Ponce v. Laborers Pension Trust*, 628 F.2d 537 (9th Cir.1980). The judgment of the trustees, however, may be set-aside by the court only if it is found to have been exercised in an arbitrary and capricious manner. *Hicks v. Pacific Maritime Ass'n.*, 567 F.2d 355 (9th Cir.1978).

---

**1.** Article II, section 1 of the 1974 Constitution of the International Association of Machinists and Aerospace Workers provides in pertinent part:

    \*    \*    \*    \*    \*    \*

The [Executive Council] will have the authority upon its own initiative to call a special convention in case of an emergency, or after having received the endorsement under seal of at least 20% of all [Local Lodge's], not more than 15 of which are located in any one state, province, or territory, submit a call for a special convention, and thereupon the [General Secretary-Treasurer] shall prepare a ballot and submit the same through the referendum calling for a special convention of the [Grand Lodge] to convene at such date as seems best to meet the emergency.

■ Plaintiff alleges that the defendants/trustees had economic alternatives available other than the elimination of the living pension feature from the plan and thus failed to act for the sole and exclusive benefit of the trust beneficiaries. For example, plaintiff contends that the workforce presently employed by the IAM could have been denied salary increases for a period of time to guarantee financial stability of the fund. This point is effectively conceded by the affidavit of Eugene D. Glover, a plan trustee, which states in pertinent part:

> There is no doubt that the IAM could have saved present payroll costs, and pension contribution costs, by putting a lid on staff salary increases, But, in doing so, we would have also put a lid on loyalty, motivation and productivity.

Plaintiff argues that employees with vested pensions have thus been prejudiced by the defendants' generosity toward present employees.

While the amendment to the plan may, given the alternatives available, appear on its face to be arbitrary and capricious, there is a fatal defect in plaintiff's argument. Article IX, section 9.1 of the trust agreement under which the defendants/trustees receive their authority provides:

> The IAM reserves the right through action by its Grand Lodge or through action by a Grand Lodge Convention to alter, amend, or terminate Article XIV of its Constitution as in effect on January 1, 1973, as amended or this Trust Agreement at any time and in any manner for any reason *without the consent of the Trustees or any other person.* (emphasis added).

It is, of course, axiomatic that in order to abuse discretion, one must first possess the authority to exercise discretion. Absent such authority, it cannot be said that the defendants/trustees breached any fiduciary duty owed to plaintiff.

## III. PLAINTIFF'S CONTRACT CLAIM

■ The pension plan here involved presents a classic textbook example of a unilateral offer that ripens into a contract only upon acceptance by performance. The IAM made a promise to its employees that, if they continued their employment with the Union in accordance with the terms of the plan, they would, upon reaching the required age and fulfilling other conditions for eligibility, receive a monthly pension according to the formula set forth in the plan.

The promise of the IAM constituted an offer, which could be accepted only by performance. *Hoefel v. Atlas Tack Corp.,* 581 F.2d 1, 4–5 (1st Cir.1978). Once plaintiff completed performance according to the terms of the offer, the Union's promise became binding. *Stacey v. Combs,* 671 F.2d 602, 606 (D.C.Cir.1982). Under these principles, the vested retirement rights of plaintiff may not be altered without his consent. *Allied Chemical & Alkali Workers v. P.P.G. Co.,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398–99 n. 20, 30 L.Ed.2d 341 (1971).

While the theoretical basis of plaintiff's argument is well supported, his contentions are irreparably handicapped by two factors. First, though the Union may have breached its agreement with plaintiff by amending its pension plan, the Union was not made a party to this action. At a minimum, it would appear that the Union would be a necessary party pursuant to Rule 19(a) of the Federal Rules of Civil Procedure and should have been joined as a defendant.

■ In addition, ERISA, being a comprehensive statute dealing with many aspects of employee benefits, includes a strong federal preemption provision. 29 U.S.C. § 1144(a) provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

The Ninth Circuit has ruled that common law causes of action for breach of contract are preempted under this section. *Lafferty v. Solar Turbines International,* 666 F.2d 408 (9th Cir.1982). As a result of these considerations, plaintiff's breach of contract theory must fail.

## DECISION

Defendants' theory that the living pension feature of plaintiff's pension plan is not an "accrued benefit" and that an amendment to the plan decreasing the same was justified under ERISA is without merit and defendants motion for summary judgment is accordingly denied. Conversely, plaintiff's motion for summary judgment is granted based upon the clear violation of ERISA by the defendants.

With respect to plaintiff's allegations that plan administrators breached the fiduciary duty owed to plaintiff, the trust agreement under which the trustees are given authority permits the plan to be amended without their consent. Defendants/trustees were thus powerless to object to the action taken at the IAM Convention to amend the pension plan and this issue must be resolved in their favor.

Finally, plaintiff's contention of breach of contract must fail because he has failed to join the Union as a necessary party, and, in any event, is precluded from maintaining any action under this theory because it has been preempted by ERISA.

LET JUDGMENT BE ENTERED ACCORDINGLY.