Arthur E. SHORT

v.

**UNITED MINE WORKERS OF AMERICA 1950 PENSION TRUST, et al., Appellants.**

No. 83–1220.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1983.

Decided Feb. 28, 1984.

---

William F. Hanrahan, Washington, D.C. with whom Jeanne K. Beck, Washington, D.C., was on brief, for appellants.

David J. Frantz, Washington, D.C., for appellee.

Before MIKVA and EDWARDS, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case is an appeal from a decision of the District Court granting summary judgment for plaintiff Arthur E. Short, a retired mine worker whose pension application was denied by the Trustees of the United Mine Workers of America 1950 Pension Trust. Short was forced to retire from coal industry employment at age 46 because of black lung disease; he would have been eligible for a pension when he reached age 55 if the eligibility criteria in effect at the time of his retirement had not subsequently been changed.

In granting summary judgment for Short, the District Court relied on a line of cases holding that it is unreasonable, and hence a breach of fiduciary duty, for the Trustees to adopt new eligibility requirements and apply them to deny the pension application of a miner in Short's situation. Those cases were decided, however, at a time when the Trustees had full authority to establish and apply eligibility criteria. In the present case, in contrast, the Trustees are required to enforce the eligibility requirements set forth in the industry's col-

lective bargaining agreement. This case is therefore governed by the Supreme Court's decision in *United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982). That decision establishes that federal courts do not have authority to review collectively bargained eligibility requirements for reasonableness and that, absent conflict with federal law or policy, trustees do not breach their fiduciary duties in administering pension trusts pursuant to the terms established in lawful collective bargaining agreements. Because the District Court failed to give full effect to *Robinson,* we reverse and remand.

## I. BACKGROUND

Plaintiff Arthur E. Short was born on October 8, 1924. He began work in the coal industry in Kentucky in 1946 and worked in classified (nonsupervisory) jobs during various periods until January 25, 1971. On that date he permanently ceased employment in the coal industry because of coal workers' pneumoconiosis, commonly known as black lung disease. On February 14, 1972, the Workmen's Compensation Board of the State of Kentucky awarded Short disability compensation for "the occupational disease of silicosis/coal workers pneumoconiosis," retroactive to January 25, 1971.[1]

At the time of Short's retirement on January 25, 1971, pensions were provided to mine workers from the United Mine Workers of America Welfare and Retirement Fund of 1950 ("1950 Fund"). The 1950 Fund had been established by the National Bituminous Coal Wage Agreement of 1950 ("1950 Wage Agreement"), which was a collective bargaining agreement signed by the United Mine Workers of America ("the Union") and the Bituminous Coal Operators' Association, Inc. ("the Operators"). The 1950 Wage Agreement provided that:

Subject to the stated purposes of this Fund, *the Trustees shall have full authority,* within the terms and provisions of the "Labor-Management Relations Act, 1947," and other applicable law, *with respect to questions of coverage and eligibility,* priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisions for benefits, investment of trust funds, and all other related matters.[2]

The Trustees exercised this "full authority" by adopting a succession of eligibility resolutions. The eligibility resolution in effect at the time of Short's retirement on January 25, 1971, was Resolution 63, which provided in paragraph I.A that:

An Applicant who subsequent to February 1, 1965, permanently ceases work in the bituminous coal industry as an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

1. Attained the age of fifty-five (55) years or over at the date of his application for pension.

2. Completed twenty (20) years' service in the coal industry in the United States, as described in paragraph II A hereof.

3. Permanently ceased work in the coal industry immediately following regular employment for a period of at least one (1) full year as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, as defined in paragraphs II B hereof.[3]

---

1. In addition, on October 4, 1974, the Social Security Administration of the United States Department of Health, Education, and Welfare awarded Black Lung benefits to Short, retroactive to July 1971, pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended.

2. The National Bituminous Coal Wage Agreement of 1950, *quoted in United Mine Workers of America Health & Retirement Funds v. Rob-*

*inson,* 455 U.S. 562, 565 n. 2, 102 S.Ct. 1226, 1229 n. 2, 71 L.Ed.2d 419 (1982) (emphasis added).

3. Paragraph I.A.3, the "signatory last employment" requirement, was held to be arbitrary and hence invalid in *Roark v. Boyle,* 439 F.2d 497 (D.C.Cir.1970), and is not at issue in this case.

Resolution 63 further provided that the above eligibility regulations *"shall be subject to amendment, revocation and revision at the discretion of the Trustees."* (Emphasis added.)

Short was not eligible to receive a pension under Resolution 63 when he retired from the coal industry. He was then only 46 years old and had completed, at most, 18¼ years of service. Had the resolution remained in effect until October 8, 1979, however, Short would then have been eligible for a pension. On that date he would have attained the age of 55, and well before that date he would have accrued an additional four years of industry service under paragraph II.A.(1)(b) of the resolution, which provided for the award of up to four years of service credit to a miner who "[r]eceived workmen's compensation payments pursuant to an award as a result of an occupational disease or injury sustained in the mine while employed in a classified job."

Resolution 63 did not remain in effect, however. It was superseded on April 1, 1971, two months after Short's retirement, by Resolution 83, which in turn was superseded on January 1, 1973, by Resolution 90. More significantly for this case, in 1974, because of their concerns about compliance with minimum funding standards of the Employee Retirement Income Security Act of 1974 ("ERISA") and about the actuarial soundness of the 1950 Fund, the Union and the Operators agreed to restructure the industry's benefit program.[4] They decided to replace the single 1950 Fund with four separate trust funds: the 1950 Pension Trust, the 1950 Benefit Trust, the 1974 Pension Trust, and the 1974 Benefit Trust. For each fund there was a trust agreement and a plan. The plans set forth the eligibility requirements and the amount of benefits payable. The trust agreements and plans were incorporated by reference and made a part of the collective bargaining agreement. Thus, Article XX, Section (b) of the National Bituminous Coal Wage Agreement of 1974 ("1974 Wage Agreement") provided in part:

Effective December 6, 1974, the name of the 1950 Fund is changed to the United Mine Workers of America 1950 Pension Trust ("1950 Pension Trust"). The 1950 Pension Trust is incorporated by reference and made a part of this Agreement. The terms of the 1950 Fund are hereby amended by substituting the terms of the 1950 Pension Trust and of the United Mine Workers of America 1950 Pension Plan ("1950 Pension Plan"). The 1950 Pension Plan is incorporated by reference and made a part of this Agreement. The pensions to be paid from the 1950 Pension Trust are as set forth in the 1950 Pension Plan.

Effective December 6, 1974, there is established a benefit plan and trust, which trust shall be known as the United Mine Workers of America 1950 Benefit Plan and Trust ("1950 Benefit Trust"). The 1950 Benefit Trust is incorporated by reference and made a part of this Agreement. The 1950 Benefit Trust provides health and other benefits, not including pension benefits, and the terms and conditions under which those benefits will be provided are as set forth in the plan under the 1950 Benefit Trust.

Article XX, Section (c) similarly established the 1974 Trusts and Plans, which are not at issue in this case.[5] The trust agreements and plans were amended by the collective bargaining parties in 1978, and the amend-

---

4. *See United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 566, 102 S.Ct. 1226, 1229, 71 L.Ed.2d 419 (1982).

5. The four trusts created by the 1974 Wage Agreement, as well as the predecessor 1950 Fund, were established pursuant to section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (Supp. V 1981). Section 302 of the Act contains a general prohi-

bition against employers making payments of any money or other thing of value to union representatives. Under section 302(c)(5), however, the general prohibition of section 302 does not apply "with respect to money or other thing of value paid to a trust fund established ... for the sole and exclusive benefit of the employees of such employer, and their families and dependents."

ed trust agreements and plans were incorporated by reference and made a part of the National Bituminous Coal Wage Agreement of 1978 ("1978 Wage Agreement"). Thus, in contrast to the 1950 Wage Agreement, which gave the Trustees "full authority" to establish eligibility requirements, the 1974 and 1978 Wage Agreements specified the eligibility requirements and directed the Trustees to enforce those requirements.

■ Short attained age 55 on October 8, 1979. On January 25, 1980, he applied to the Trustees for a pension. At that time, pension eligibility was governed by the 1950 Pension Plan as incorporated in the 1978 Wage Agreement. That Plan provides two bases for pension eligibility. First, under Article II.A, entitled "Continuation of Pension Under 1950 Fund," "[a] participant entitled to receive a pension benefit on [December 6, 1974] pursuant to the eligibility rules of the United Mine Workers of America Welfare and Retirement Fund of 1950 shall be eligible for a pension under this Plan." [6] Second, under Article II.B, entitled "Persons Retiring Before 1976":

A participant who ceased or ceases to perform classified work for an Employer prior to December 31, 1975 ... shall be eligible for a pension under this Plan if he has:

(1) Attained the age of fifty-five (55) years, and

(2) Either completed twenty (20) years of credited service, including the required amount of signatory service as set forth in Article IV(C)(4) or completed at least ten (10) years of signatory service, including at least three (3) years of signatory service after December 31, 1970.

Article IV.C.(4) requires a participant such as Short who attains age 55 between January 1, 1979, and December 31, 1980, to have at least eight years of signatory service after May 28, 1946.[7]

The Trustees reviewed Short's application under Article II.B of the 1950 Pension Plan and determined that Short could establish, at most, credit for 17 years of classified service, including 4¾ years of signatory service after May 28, 1946, under the terms of the 1950 Pension Plan.[8] Accordingly, the Trustees denied Short's pension application by letter dated February 6, 1980, for failure to establish credit either for 20 years of classified service, including eight years of signatory service after May 28, 1946, or for ten years of signatory service, including at least three years of signatory service after December 31, 1970, as required by Article II.B of the Plan.

On August 4, 1982, Short brought suit in the District Court. Jurisdiction was based on sections 301(c) and 302(e) of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185(c), 186(e) (1976); section 502(f) of ERISA, 29 U.S.C. § 1132(f) (1976); 28 U.S.C. § 1331 (Supp. V 1981); and 28

---

6. Short argues for the first time on appeal that he is eligible for a pension under the terms of Article II.A of the 1950 Pension Plan. *See* Brief for Appellee at 11–13. Short's theory below was solely that the Trustees should have evaluated his pension application under the terms of Resolution 63 *rather than* under the terms of the 1950 Pension Plan. Indeed, none of the pleadings filed in the District Court by either party, nor the opinion of the District Court, contains even as much as a reference to Article II.A. Because Short never raised the issue of the interpretation of Article II.A below, we decline to reach the merits of this issue today. Rather, we apply the general rule that litigative theories not pursued in the trial court will not be entertained on appeal. *See, e.g., Kassman v. American University,* 546 F.2d 1029, 1032 (D.C.Cir.1976) (per curiam).

7. The 1950 Pension Plan also provides in Article II.C for a disability pension for "[a] participant who is not otherwise eligible for a pension benefit hereunder who became totally disabled prior to [December 6, 1974] as the result of a mine accident, after May 29, 1946, while employed in a classified job for an Employer." Short never applied for a disability pension and does not argue that he is eligible for one.

8. The method of computing service credit under the 1950 Pension Plan differs from the method of computing service credit under Resolution 63. Also, under Article IV.A.(3) of the 1950 Pension Plan, a miner can receive service credit for up to four years during which he receives state workmen's compensation payments as a result of an occupational disease *only* if he has at least ten years of signatory service credit.

U.S.C. § 1332 (1976). Short alleged that "[t]he plaintiff's application for retirement benefits was denied because he failed to satisfy the eligibility criteria adopted after he became disabled, as set forth in the 1950 Pension Plan. The defendants have refused to evaluate the plaintiff's eligibility for retirement based upon Resolution 63 which was in effect at the time of his forced retirement." Complaint ¶ 9. Short argued that "[t]he defendant's denial of the plaintiff's application for full retirement benefits based upon regulations adopted subsequent to his retirement is arbitrary and capricious, a violation of the fiduciary duties of the Trustees, and is in breach of the plaintiff's contractual rights to retirement benefits." Id. ¶ 10. Both parties moved for summary judgment. On January 28, 1983, the District Court granted summary judgment for Short and ordered the Trustees to enroll Short as a pensioner in the 1950 Pension Trust with all related health benefits pursuant to the 1950 Benefit Plan and Trust, effective the date of Short's pension application, January 25, 1980.

## II. ANALYSIS

### A.

Prior to the Supreme Court's decision in *United Mine Workers of America Health & Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), case law in this Circuit dealing with the 1950 Fund established the authority of federal courts to review the reasonableness both of the eligibility requirements adopted by the Trustees and of the Trustees' application of those requirements to individual cases. The standard of review was that "decisions of the trustees on pension eligibility are to be sustained by courts if they are not arbitrary or capricious, and if the trustees' factual judgments are supported by substantial evidence in the record as a

whole." *Maggard v. O'Connell*, 671 F.2d 568, 570–71 (D.C.Cir.1982) (footnote omitted); *see also Pete v. United Mine Workers of America Welfare & Retirement Fund of 1950*, 517 F.2d 1275, 1283 (D.C.Cir.1975) (en banc) ("the Trustees have 'full authority ... with respect to questions of coverage and eligibility' and ... the court's role is limited to ascertaining whether the Trustees' broad discretion has been abused by the adoption of arbitrary or capricious standards"); *Kosty v. Lewis*, 319 F.2d 744, 747 (D.C.Cir.1963) ("the Trustees, like all fiduciaries, are subject to judicial correction in a proper case upon a showing that they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run"), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964).

In particular, two cases—*Lavella v. Boyle*, 444 F.2d 910 (D.C.Cir.) (per curiam), *cert. denied*, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971), and *Stacey v. Combs*, 671 F.2d 602 (D.C.Cir.1982)—dealt specifically with miners who retired involuntarily because of black lung disease. These miners were ineligible for a pension at the time of their retirement because they failed to satisfy either the age (Lavella) or the length of service (Stacey) requirement. Under the resolution in effect at the time of their retirement, however, they would automatically satisfy all eligibility requirements upon the inexorable passage of time, either by merely growing older (Lavella) or by accumulating service credit as a result of continuing to receive state workmen's compensation payments after retirement (Stacey). These cases acknowledged that normally the Trustees had authority to change eligibility requirements at any time, and that normally whatever eligibility requirements were in effect at the time a miner submitted his pension application would govern the Trustees' review of that application.[9] Nevertheless, the cases held that it

---

**9.** Indeed, both *Lavella* and a similar case involving an employee in the trucking industry, *Saunders v. Teamsters Local 639, Employees Pension Trust*, 667 F.2d 146 (D.C.Cir.1981) (per curiam), distinguished but did not overrule

*Gaydosh v. Lewis*, 410 F.2d 262 (D.C.Cir.1969). In *Gaydosh*, a miner *voluntarily* retired after satisfying all of the eligibility requirements then in effect except for age. When he reached the retirement age and applied for a pension,

was arbitrary and capricious for the Trustees to adopt new eligibility requirements [10] and apply them to deny the pension applications of miners in the special situation of Lavella and Stacey.[11]

Short argues that the present case is governed by *Lavella* and *Stacey*. At the time of his involuntary retirement because of black lung disease, Short satisfied all of the eligibility requirements then in effect except for age and years of service. Like Lavella, Short automatically would have satisfied the age requirement upon the passage of time. And like Stacey, Short automatically would have satisfied the service requirement upon the passage of time under a provision allowing time on workmen's compensation after retirement to count toward total years of service. Thus, Short argues, it was arbitrary and capricious for the Trustees to apply the changed eligibility requirements to deny his pension application.

This case is critically different from *Lavella* and *Stacey,* however, because in this case the Trustees did not have "full authority ... with respect to questions of coverage and eligibility." Rather, the Trustees were required to apply the eligibility criteria established by the collective bargaining parties and incorporated in the collective bargaining agreement. Accordingly, our review of the eligibility criteria and of the Trustees' application of those criteria is not governed by *Lavella* and *Stacey,* but by the Supreme Court's decision in *United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

### B.

In *Robinson,* the Supreme Court reviewed a provision of the 1950 Benefit Trust as incorporated in the 1974 Wage Agreement. The provision at issue extended life-time health-care coverage to unmarried widows and dependents of miners who died prior to December 6, 1974, and who at the time of their deaths were receiving retirement or disability pensions under the eligibility rules of the 1950 Fund, but not to unmarried widows and dependents of miners who died prior to December 6, 1974, and who at the time of their deaths were still working even though eligible for pensions. The court of appeals had held that the requirement in section 302(c)(5) of the Labor Management Relations Act that employee benefit trust funds be maintained "for the sole and exclusive benefit of the employees ... and their families and dependents" meant that eligibility rules fixed by a collective bargaining agreement must meet a reasonableness standard. The court of appeals concluded that the discrimination between widows of pensioners and widows of pension-eligible miners in the 1950 Benefit Trust did not meet this reasonableness standard, and hence was invalid. The Supreme Court reversed.

The Supreme Court held that "when neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." 455 U.S. at 576, 102 S.Ct. at 1234 (footnote omitted). The Court further held that this principle ap-

---

the Trustees denied his application on the basis of new eligibility requirements that had been adopted subsequent to his retirement. The court upheld the Trustees' decision.

**10.** In *Lavella,* the old eligibility criteria required twenty years of service, while the new criteria required twenty years of service within the thirty year period immediately preceding the date of receipt of the miner's pension application. In *Stacey,* the old eligibility criteria permitted a miner to count time on workmen's compensation after retirement toward the total years of service up to a maximum of four years, while the new criteria permitted a miner

to count time on workmen's compensation only if he already had ten years of signatory service.

**11.** In *Saunders v. Teamsters Local 639, Employees Pension Trust,* 667 F.2d 146 (D.C.Cir. 1981) (per curiam), the court suggested that trustees *could* apply new eligibility requirements to deny the pension application of a worker who involuntarily retired after meeting all eligibility requirements then in effect except for age, if they presented the court with "an explanation reasoned and buttressed by the purpose and interest of the fund." 667 F.2d at 149.

plies with full force when the terms of the collective bargaining agreement establish pension or benefit plan eligibility requirements: "As long as [eligibility] conditions do not violate federal law or policy, they are entitled to the same respect as any other provision in a collective-bargaining agreement." *Id.* at 575, 102 S.Ct. at 1234. Finally, the Court held that section 302(c)(5) of the Labor Management Relations Act is not violated by eligibility conditions contained in collective bargaining agreements that fail to satisfy an "undefined standard of reasonableness." *Id.* at 574, 102 S.Ct. at 1233. The Court concluded from the language and legislative history of section 302(c)(5), as well as from the Court's precedents, that section 302(c)(5) was not intended to embody a reasonableness requirement, but was intended solely to require that "employer contributions to employee benefit trust funds must accrue to the benefit of employees and their families and dependents, to the exclusion of all others." *Id.* at 570, 102 S.Ct. at 1231.

The Court did concede, however, that section 302(c)(5) imposed traditional fiduciary duties on trustees, and left open the possibility that those duties might be enforceable in federal court:

In *NLRB v. Amax Coal Co.,* [453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981)], the Court held that in enacting § 302(c)(5) "Congress intended to impose on trustees traditional fiduciary duties." The Court did not decide, nor do we decide today, whether federal courts sitting as courts of equity are authorized to enforce those duties. It is, of course, clear that compliance with the specific standards of § 302(c)(5) in the administration of welfare funds is enforceable in federal district courts under § 302(e) of the LMRA. See *Arroyo v. United States,* 359 U.S. 419, 426–427 [79 S.Ct. 864, 868–869, 3 L.Ed.2d 915].

*Robinson,* 455 U.S. at 573 n. 12, 102 S.Ct. at 1233 n. 12. In *Robinson,* however, because the eligibility requirements were determined by the collective bargaining parties and not by the Trustees, and because the Trustees had no discretion in the application of those requirements, no fiduciary duties of the Trustees had been breached. The Supreme Court distinguished the situation in *Robinson* from the situation in which the Trustees had "full authority ... with respect to questions of coverage and eligibility":

The Court of Appeals did not attempt to ground its holding on the text or legislative history of § 302(c)(5). Rather, the court relied upon cases in which trustees of employee benefit trust funds, not the collective-bargaining agreement, fixed the eligibility rules and benefit levels. The Court of Appeals has held in those cases "that the Trustees have 'full authority ... with respect to questions of coverage and eligibility' and that the court's role is limited to ascertaining whether the Trustees' broad discretion has been abused by the adoption of arbitrary or capricious standards." *Pete v. United Mine Workers of America Welfare & Retirement Fund of 1950,* 171 U.S.App.D.C. 1, 9, 517 F.2d 1275, 1283 (1975) (en banc) (footnote omitted). Noting that "[t]he institutional arrangements creating this Fund and specifying the purposes to which it is to be devoted are cast expressly in fiduciary form," the court stated that "the Trustees, like all fiduciaries, are subject to judicial correction in a proper case upon a showing that they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run." *Kosty v. Lewis,* 115 U.S.App.D.C. 343, 346, 319 F.2d 744, 747 (1963), cert. denied, 375 U.S. 964 [84 S.Ct. 482, 11 L.Ed.2d 414]. *Those cases, however, provide no support for the Court of Appeals' holding in this case. The petitioner trustees were not given "full authority" to determine eligibility requirements and benefit levels, for these were fixed by the 1974 collective-bargaining agreement. By the terms of the trust created by that agreement, the trustees are obligated to enforce these determinations unless modification is required to comply with applicable federal law. The common law of trusts does not alter this obligation.* See *NLRB v. Amax Coal Co.,*

453 U.S., at 336–337 [101 S.Ct., at 2797–2798]; Restatement (Second) of Trusts § 164 (1959). Cf. 29 U.S.C. § 1104(a)(1)(D) (1976 ed., Supp. IV). *Absent conflict with federal law, then, the trustees breached no fiduciary duties in administering the 1950 Benefit Trust in accordance with the terms established in the 1974 collective-bargaining agreement.*

*Robinson*, 455 U.S. at 573–74, 102 S.Ct. at 1232–33 (footnotes omitted) (emphasis added).

█ The present case is controlled by *Robinson.* In the present case, as in *Robinson,* the eligibility requirements at issue were fixed by a collective bargaining agreement—in this case, the 1978 Wage Agreement.[12] As in *Robinson,* the Trustees are obligated to enforce these eligibility requirements unless modification is required to comply with applicable federal law. Indeed, the relevant language in the 1978 Wage Agreement governing the administration of the trusts is virtually identical to the corresponding language of the 1974 Wage Agreement considered by the Supreme Court in *Robinson.*[13] In addition, Article IV of the 1950 Pension Trust, as

---

**12.** The District Court's opinion suggests at one point that the Trustees in this case, as in *Lavella* and *Stacey,* adopted the eligibility requirements at issue. *See Short v. United Mine Workers of America 1950 Pension Trust,* No. 82–2180, slip op. at 9 (D.D.C. Jan. 28, 1983) ("The [*Robinson*] Court distinguished cases such as this one in which the trustees of employee benefit funds determined the eligibility rules."), *reprinted in* Record Excerpts ("R.E.") 9. The record, however, clearly establishes that the eligibility requirements at issue in this case were adopted by the collective bargaining parties to the 1974 and 1978 Wage Agreements.

We need not decide today to what extent the analysis in *Robinson* is limited to cases in which the eligibility requirements are established by collective bargaining, or to what extent the analysis in *Lavella* and *Stacey* retains vitality in cases in which the trustees establish the eligibility requirements. We note, however, that several circuits have interpreted *Robinson* to be limited to the context in which the eligibility requirements are determined by collective bargaining, and have continued to review eligibility requirements and trustees' eligibility decisions for reasonableness under section 302(c)(5) in cases in which the eligibility requirements are determined by the trustees. *See, e.g., Murn v. United Mine Workers of America 1950 Pension Trust,* 718 F.2d 359, 361 (10th Cir.1983); *Hurn v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California,* 703 F.2d 386, 389 (9th Cir.1983); *Sellers v. O'Connell,* 701 F.2d 575, 577 (6th Cir.1983). The Ninth Circuit also has held that regardless of whether federal courts have authority to enforce the fiduciary duties imposed on trustees by section 302(c)(5) —a question left open by the Supreme Court in *Robinson*—they have authority under section 502(f) of ERISA, 29 U.S.C. § 1132(f) (1976), to enforce the essentially identical fiduciary duties imposed by section 404 of ERISA, 29 U.S.C. § 1104 (1976 & Supp. V 1981). *See Music v. Western Conference of Teamsters Pension Trust Fund,* 712 F.2d 413, 417–18 (9th Cir.

1983); *Elser v. I.A.M. National Pension Fund,* 684 F.2d 648, 653–54 (9th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). But the Ninth Circuit was careful to distinguish cases such as *Music* and *Elser* in which the trustees are responsible for the eligibility requirements and their application from cases such as *Robinson* in which the trustees are directed to apply requirements set forth in a collective bargaining agreement.

**13.** The language of Article XX, Section (h)(5) of the 1974 Wage Agreement was quoted in part by the Supreme Court in *Robinson,* 455 U.S. at 574 n. 13, 102 S.Ct. at 1233 n. 13. The corresponding language in the 1978 Wage Agreement involved in the present case is contained in Article XX, Section (g)(4) and provides:

The Trustees are authorized, upon prior written approval by the Employers and the Union, to make such changes in the Plans and Trusts hereunder as they may deem to be necessary or appropriate.

They are also authorized and directed, after adequate notice and consultation with the Employers and Union, to make such changes in the Plans and Trusts hereunder, including any retroactive modifications or amendments, which shall be necessary:

(a) to obtain all necessary determination letters or rulings from the Internal Revenue Service or other applicable federal agencies so as to ensure compliance with all applicable federal laws and regulations and ensure the continued qualification of the 1950 and 1974 Pension Plans and Trusts and the deductibility for income tax purposes of any and all contributions made by signatory Employers to such Trusts as paid or incurred;

(b) to conform the terms of each Plan and Trust to the requirements of ERISA, or any other applicable federal law, and the regulations issued thereunder;

(c) to obtain determination letters from the Internal Revenue Service that the two pension Plans will each meet the requirements of

incorporated in the 1978 Wage Agreement, provides that "[t]he Trustees . . . are directed . . . to pay monies from the 1950 Pension Trust *in accordance with the terms of the Plan* for the purpose of distributing the benefits payable under the Plan." (Emphasis added.) Under *Robinson,* therefore, absent conflict with federal law, we have no authority to invalidate the collectively bargaining eligibility requirements at issue in this case on the ground of unreasonableness, and we cannot invalidate as arbitrary, capricious, or a breach of fiduciary duty the actions of the Trustees in administering the 1950 Pension Trust in accordance with the terms established in the collective bargaining agreement.

## C.

◼ Short argues that *Robinson* is not controlling because the present case, unlike *Robinson,* "involves an attempt to extinguish Short's vested right to retirement benefits." Brief for Appellee at 14. In *Robinson,* according to Short, the collective bargaining parties merely increased the benefits available to one class of widows while leaving the benefits available to another class of widows unchanged, disturbing no pre-existing vested rights to benefits. Short points out that the Supreme Court in *Robinson* specifically acknowledged that vested pension rights may not be altered unilaterally:

> Section 401 of the Internal Revenue Code and the Trusts thereunder will be exempt under Section 501(a) of such Code and that the two Benefit Trusts will be exempt under Section 501(c)(9) of such Code;
> (d) to establish the deductibility for income tax purposes of any and all contributions made by the signatory operators to the Pension Trusts and Benefits Trusts as paid or incurred; or
> (e) to comply with all applicable court or government decisions or rulings.
> The language authorizing the Trustees "upon prior written approval by the Employers and the Union, to make such changes in the Plans and Trusts hereunder as they may deem to be necessary or appropriate," does seem to vest the Trustees with some discretionary control over the eligibility criteria. The identical language (except for the words "prior written"), however, was contained in the 1974 Wage

We also recognized [in *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971)] that [retirees] are not without protection: "Under established contract principles, vested retirement rights may not be altered without the pensioner's consent. See generally Note, 70 Col.L. Rev. 909, 916–920 (1970). The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed. See *Smith v. Evening News Assn.,* 371 U.S. 195, 200–201 [83 S.Ct. 267, 270–271, 9 L.Ed.2d 246] (1962); *Lewis y. Benedict Coal Corp.,* 361 U.S. 459, 470 [80 S.Ct. 489, 495, 4 L.Ed.2d 442] (1960)." 404 U.S., at 181, n. 20 [92 S.Ct., at 398 n. 20]

*Robinson,* 455 U.S. at 575 n. 14, 102 S.Ct. at 1234 n. 14.

Short does not elaborate on this argument, and in particular does not explain exactly what he means by "vested right" or exactly what cause of action he is asserting. If Short is arguing that he had contractually vested pension rights under the 1950 Wage Agreement and the Trustees' resolutions, we fail to see where he finds the source of these rights. Pre-ERISA law permitted the establishment and continuance of pension plans that did not provide vested rights to participating employees before normal retirement age.[14] *See Roark v.*

Agreement considered by the Supreme Court in *Robinson. See* 455 U.S. at 574 n. 13, 102 S.Ct. at 1233 n. 13. The Court in *Robinson* interpreted this language to obligate the Trustees to enforce the eligibility requirements fixed by the collective bargaining agreement "unless modification is required to comply with applicable federal law." *Id.* at 573–74, 102 S.Ct. at 1232–33. In particular, the Court clearly did *not* interpret this language to require the Trustees to propose and seek approval to make changes in "unreasonable" terms in the plans. We are bound by the Court's interpretation of this language.

14. Furthermore, Short is not protected by the minimum vesting standards of ERISA. Section 203(a) of ERISA, 29 U.S.C. § 1053(a) (1976 & Supp. V 1981), which contains ERISA's nonforfeitability requirements, "only protects against forfeiture the benefits of those who were in an employee status on January 1, 1976, or there-

*Boyle,* 439 F.2d 497, 505 (D.C.Cir.1970); H.R. REP. No. 779, 93d Cong., 2d Sess. 11–12 (1974) ("Present law generally does not require a retirement plan to give a covered employee vested rights to benefits—that is, the right to receive benefits even if he leaves or loses his job before retirement age."); H.R. REP. No. 807, 93d Cong., 2d Sess. 11–12 (1974), U.S.Code Cong. & Admin.News 1974 pp. 4630, 4679 (same). Short points to no language in the 1950 Wage Agreement or in any of the Trustees' resolutions that even suggests that the 1950 Fund provided for vesting prior to retirement age.

Alternatively, Short may be arguing that *Lavella* and *Stacey* give him a judicially created "vested" pension right. Both *Lavella* and *Stacey* did use the phrase "sufficiently vested" in describing their holdings. The court in *Lavella,* however, explained the sense in which it used this phrase:

> In the instant case, . . . appellant's opportunity to "mature" his pension eligibility, *i.e.,* to apply for and receive a pension upon reaching the required age, was unreasonably denied by the application of the new policy to his case, since he had met all the then extant requirements for a pension except age, and he was prevented by his physical condition from continuing to work in order to fulfill the additional condition for pension eligibility imposed by the changed policy. *Our use of the term "vested" in these circumstances is merely a shorthand way of describing this situation.*

*Lavella,* 444 F.2d at 912 n. 3 (emphasis added).[15]

It is clear that in *Lavella* and *Stacey* the court developed a concept of "sufficiently vested" merely to test the reasonableness of the Trustees' exercise of discretion. In no sense do these opinions purport to apply a concept of "vesting" (or nonforfeitability) as embodied in ERISA. *See* note 14 *supra.* Moreover, *Lavella* and *Stacey* do not suggest that the rights there found to be "sufficiently vested" could not be altered by new eligibility requirements adopted by the collective bargaining parties. It may be arguably *unreasonable* for the collective bargaining parties to adopt new eligibility requirements, but, under *Robinson,* federal courts cannot review collectively bargained eligibility requirements for reasonableness. Furthermore, under *Robinson,* once the collective bargaining parties adopt eligibility requirements that specifically apply to a class of miners—in the present case, miners who ceased to perform classified work for an employer prior to December 31, 1975—it is not a breach of fiduciary duty for the Trustees to apply those requirements as directed to all miners in that class.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is reversed and the case is remanded.

*So ordered.*

---

after." *Flynn v. Aetna Casualty & Surety Co.,* 698 F.2d 758, 759 (5th Cir.1983); *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 755 (7th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); *see* 29 U.S.C. § 1002(6) (1976) (definition of "employee"); *id.* § 1053(a) (1976 & Supp. V 1981) (nonforfeitability of employees' rights to retirement benefits); *id.* § 1061(b)(2) (1976) (effective dates).

15. The court in *Stacey* placed the phrase "sufficiently vested" in quotation marks, suggesting that it was using it in the same sense as in *Lavella. See Stacey,* 671 F.2d at 606.